## SANCHO, Treasurer, v. BOWIE et al.
### No. 3250.

Circuit Court of Appeals, First Circuit.

Dec. 8, 1937.

Col. William C. Rigby, of Washington, D. C. (B. Fernandez Garcia, Atty. Gen. of Puerto Rico, and Nathan R. Margold, Solicitor for Department of Interior, of Washington, D. C., on the brief), for appellant.

E. T. Fiddler, of San Juan, P. R. (Fiddler, Cordova & McConnell, of San Juan, P. R., on the brief), for appellees.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

This is an action brought in the federal District Court of Puerto Rico to recover

certain taxes paid by the plaintiffs, which had been assessed on raw sugar in the possession of the plaintiffs.

The plaintiffs are residents and citizens of the United States and sue in their capacity as trustees of the Eastern Sugar Associates, a trust created by a declaration of trust entered into in Baltimore in the state of Maryland on January 16, 1934. The defendant, Rafael Sancho Bonet, is a resident and citizen of Puerto Rico, and is the duly appointed and qualified treasurer of Puerto Rico. The amount in controversy in the action is over $3,000.

The plaintiffs in their capacity as trustees are engaged in raising sugar cane on the Island of Puerto Rico, and on January 15, 1935, had on hand in Puerto Rico as owners thereof 32,505.9 short tons of raw centrifugal sugar, which was extracted at their own mills from cane produced on their own lands during the calendar year 1934.

Defendant's counsel in argument referred to this association· of trustees as violating the Resolution of Congress of May 1, 1900, limiting corporations engaged in agriculture to the ownership and control of 500 acres of land, which was characterized by the plaintiffs' counsel as a sort of "red herring" drawn across the case, and needs no comment. The point was not specifically raised or considered in the court below, nor by the defendant's assignments of error, and seems to have been disposed of by the Supreme Court of Puerto Rico in the recent case, not yet reported in English, of Baetjer v. Registrar, 48 Puerto Rico 647, 664.

The defendant, as treasurer of Puerto Rico, assessed the sugar so held on hand by the plaintiffs for the fiscal year 1935–36, as follows: 14,352 short tons at $53.20 per ton, and 18,153.9 short tons at $18 per ton. The reason for this difference in price per short ton was due to the fact that in 1934 none of the sugar, by reason of congressional acts and orders and regulations of the Agriculture Department, could be sold in the United States, but in February, 1935, permission was granted to the sugar producers of Puerto Rico to sell in continental United States 100,000 short tons of raw sugar. The plaintiffs' proportionate share of this amount was 14,352 short tons, which brought $53.20 per short ton. The balance of the raw sugar of the plaintiffs produced in 1934 was valued by the taxing authorities at the price in London of $18 per short ton.

The plaintiffs in their declaration alleged, first, that the valuation for the purpose of taxation was erroneous, and, secondly, that the plaintiffs' raw sugar was exempt from taxation under subdivision (h) of section 291 of the Political Code of Puerto Rico, which provides:

"Sec. 291. The following property shall be exempted from taxation: * * *

"(h). The growing crops and products of the land actually owned by and still in the hands of the producer."

The defendant demurred to the plaintiffs' declaration. The District Judge in effect, at least, in his opinion overruled the demurrer as to the first ground, and held that the method of valuation used by the treasurer in assessing the tax was not invalid; but further held that the raw sugar of the plaintiffs still in their possession, the product of cane raised on their own land, and extracted in their own mills, was exempt as a product of the land under subdivision (h) of section 291 of the Political Code of Puerto Rico.

There was no dispute as to the facts, and the judgment of the District Court was a conclusion of law. The questions involved in the case are raised by the following assignments of error:

"II. That the District Court erred in holding that raw sugar is a product of the land within the purview of subdivision (h) of section 291 of the Political Code, which is as follows:

" 'The growing crops and products of the land actually owned and still in the hands of the producer' as including raw sugar among the products exempt from taxation thereunder."

The question is: What are included in the expression, "products of the land" as used in subdivision (h) of section 291 of the Political Code? While agricultural products may be a broader and more inclusive term, it unquestionably includes "products of the land." According to the lexicographers, agriculture is defined as the art or science of cultivating the ground including the harvesting of crops and in a broad sense the science or art of the production of plants and animals useful to man, including in a variable degree the preparation of these products for man's use. "In the broad sense it includes farming, horticulture and forestry, together with such subjects as butter, cheese, *making sugar*, etc." (Italics supplied.) See Webster's New International Dictionary; Bou-

vier's Law Dictionary under Titles, Agricultural Products and Agriculture.

The Legislature of Puerto Rico, in Act No. 36, approved June 20, 1925, entitled "An Act to provide for the inspection, classification, regulation and licensing of warehouses and other inclosures where agricultural products are stored," used the term "agricultural products" as also including products of the land. As defined in the act, *"The term 'agricultural product' wherever used in this Act, shall include cotton, fertilizer, grain products, grains, tobacco, coffee, sugar, rice, beans, * * * and other agricultural and farm products or any by-product thereof."* (Italics supplied.) Section 2.

In an act, Act March 10, 1904, p. 141, entitled, "An Act authorizing agriculturists to contract loans guaranteed by products and agricultural implements, and for other purposes," sections 1 and 2 of this Act provide as follows:

"Section 1. The agriculturists may contract loans upon products and agricultural implements, which they shall keep in their hands, carefully and gratuitously while serving as guaranty for money loaned.

"Section 2. There shall be admitted, as guaranty for this special kind of loan, crops gathered, or to be gathered, *farm products,* grain, seeds, vegetables, alcoholic beverages, molasses, *sugar,* tobacco, * * *". (Italics supplied.)

The Supreme Court has in several decisions treated sugar, even when refined, as the natural and ultimate product of the cane, and planters raising, grinding, and refining their own sugar, as exempt from a tax. In American Sugar Refining Co. v. State of Louisiana, 179 U.S. 89, 21 S.Ct. 43, 44, 45 L.Ed. 102, in which a Louisiana statute imposed a license tax upon persons carrying on the business of refining sugar and molasses, provided that the tax should not apply to planters and farmers grinding and refining their own sugar and molasses.

It was contended that the act "violates the Constitution of the United States, and is void in so far as it attempts to impose a license tax on this defendant, because said act denies to this defendant the equal protection of the laws of the state, inasmuch as said act does not impose equally a license tax on all persons engaged in the business of refining sugar and molasses, but discriminates in favor of planters who refine their own sugar and molasses, and in favor of planters who granulate syrups for other planters during the rolling season."

The court held, however, that:

"From time out of mind it has been the policy of this government, not only to classify for purposes of taxation, but to exempt producers from the taxation of the methods employed by them to put their products upon the market. The right to sell is clearly an incident to the right to manufacture or produce, and it is at least a question for the legislature to determine whether anything done to prepare a product most perfectly for the needs of the market shall not be treated as an incident to its growth or production. The act is not one exempting planters who use their sugar in the manufacture of articles of a wholly different description, such as confectionery, preserves, or pastry, or such as one which should exempt the farmer who devoted his corn or rye to the making of whiskey, while other manufacturers of these articles were subjected to a tax. A somewhat different question might arise in such case, since none of these articles are the natural products of the farm,—such products only becoming useful by being commingled with other ingredients. *Refined sugar, however, is the natural and ultimate product of the cane, and the various steps taken to perfect such product are but incident to the original growth."* (Italics supplied.)

In Pampanga Sugar Mills v. Trinidad, 279 U.S. 211, 49 S.Ct. 308, 309, 73 L.Ed. 665, involving a Philippine statute providing for a tax on commodities sold by merchants, section 1460 of the act, Administrative Code 1917, provided that transactions in the following commodities should be excluded from the application of the Act:

"(a) Things subject to a specific tax,

"(b) Agricultural products when sold by the producer or owner of the land where grown, or by any other person other than the merchant or commission merchant, whether in their original state or not."

The Pampanga Sugar Mills was engaged in the business of milling raw sugar for others. The court held it was not exempt under this section, but in the course of its opinion said:

"The exceptions are provided in section 1460, and the corporation is not relieved by either of them. The first is: '(a) Things subject to a specific tax.' Sugar

confessedly is not. The second exception is: '(b) Agricultural products when sold by the producer or owner of the land where grown, or by any other person other than a merchant or commission mechant, whether in their original state or not.' Exception (b) affords no immunity to the corporation. Sugar cane is an 'agricultural product' and the grower would doubtless have immunity on the sale of his half of the sugar made therefrom provided he sold it himself or through someone other than a merchant (including the manufacturer) or a commission merchant."

The corporation contended that it was entitled to the benefits of the exception (b), because sugar is an "agricultural product" and the corporation was the "producer." The court rejected this contention, stating:

"Centrifugal sugar may well be considered an agricultural product, but he who produces it is the agriculturist—the grower—not the manufacturer. That the word 'producer' is used in section 1460 in this restrictive sense is made clear by the alternative exemption granted to the 'owner of the land where grown.'"

To the ordinary mind when products of the land are mentioned it is understood to include those agricultural products that are produced from the soil. No one would contend that sugar cane when cut is not an agricultural product and a product of the land. We do not think, therefore, that it can be successfully contended that raw sugar when extracted from the cane, which must be done as soon as practical after being cut to preserve the juice from deteriorating, is not also an agricultural product and a product of the land. The juice of the sugar cane is clearly a product of the land and in the process of extraction and separation into raw sugar is not mixed with any other ingredient. By a well-known process the juice of the cane, after boiling and purifying, contains raw sugar in crystal form and molasses. It is then placed in a centrifugal and the molasses is thrown off, leaving the raw sugar. The change of the sugar content of the cane into the crystal form of raw sugar is necessary to prepare the product for market, and is not such a change as to render the result any less a product of the land within the meaning of subdivision (h) of section 291 of the Political Code of Puerto Rico.

Counsel for defendant cites Allen v. Smith, 173 U.S. 389, 19 S.Ct. 446, 43 L.Ed. 741, which arose under a federal statute, 28 Stat. 933, authorizing the payment of a bounty to the "producers and manufacturers of sugar."

It appeared that Allen was the owner of a sugar plantation in Louisiana and extracted in his own mill the sugar from the cane raised by him. It happened that he died in September, 1934, and just before the cane on his plantation was ready to be cut. By his will he gave the proceeds of the operation of his plantation for five years, or pending a sale, to his widow. She was not the owner of the cane. The executors cut the cane and had the sugar extracted at the decedent's mill. The court held that, under the federal statute, the widow was the producer of the sugar and entitled to the bounty. The question of whether raw sugar was a product of the land was not involved in the case, owing to the language of the bounty act.

In referring to the case of Allen v. Smith, the Supreme Court in the Pampanga Case, supra, in distinguishing it from that case, said:

"In Allen v. Smith, 173 U.S. 389, 399, 19 S.Ct. 446, (43 L.Ed. 741), this court, while holding that under the particular statute before it there was no legal distinction made between 'manufacturer' and 'producer,' *observed that the latter term 'is more commonly used to denote a person who raises agricultural crops and puts them in a condition for the market.'*" (Italics supplied.)

From every viewpoint, including the definition of agricultural products, as the term is used in various acts of the Legislature of Puerto Rico, and as used in the decisions of the Supreme Court above referred to, and from the viewpoint of the common, ordinary meaning given to products of the land, we think it is clear that raw centrifugal sugar is both an "agricultural product" and a "product of the land," and that the exemption from taxation in section 291 of the Political Code of Puerto Rico, even when strictly construed, must include not only the sugar cane when cut, but the raw sugar when extracted by the grower from the cane in his own mill by the well-known process.

The judgment of the District Court is affirmed, with costs of appeal.