BERNARD, et al. *v.* BOARD OF SUPERVISORS
JACKSON COUNTY, et al.

Feb. 2, 1953

No. 38574 18 Adv. S. 1 62 So. 2d 576

388

*Amy Burkett* and *C. G. Thomas,* for appellants.

*Carl A. Megehee,* for appellees.

Holmes, J.

The Board of Supervisors of Jackson County, joined by Township Trustees, all of whom are the appellees here, brought this suit in the Chancery Court of Jackson County seeking to enjoin the appellants from cutting, removing, and selling for profit the merchantable timber on approximately forty-nine acres of land in Section 16, Township 6 South, Range 7 West, Jackson County, on which appellants owned an unexpired 99-year lease.

It was alleged in the original bill that appellants were the owners of the lease for the unexpired term and had

announced their purpose and intention to cut, remove, and sell the timber for their own use and benefit, but that appellants were without right or authority so to do, except in the exercise of the right to reasonable estovers. The appellants answered, denying that the appellees had any right, title, or interest in, or control over, the timber standing upon the land, claiming the absolute ownership thereof and the right to cut, remove, and sell the same for their sole profit, averring that they acquired the unexpired lease by inheritance from their ancestor, Caroline Anderson, who had acquired the same by deed dated June 27, 1913, and further averring that all of the timber growing upon the land at the time the lease was originally granted had been removed prior to the acquisition of the lease by their ancestor, and that the timber presently standing upon the land had grown thereon since the acquisition of the lease by their ancestor. Appellants made their answer a cross-bill, in which they further alleged the following: ''That upon acquiring said lease the said Caroline Anderson elected to use said lands for the growing of pine timber, a use to which it is well adapted, and that at all times thereafter, it was and has been used exclusively for that purpose and that any and all timber now growing upon said land is a crop which has been produced by the immediate ancestor of these defendants and is the exclusive property of these defendants, which they, and they only, have the right to harvest and sell for their own use and benefit.'' The appellees set forth in their answer to the cross-bill that they did not know whether the ancestor of the appellants elected to use the land for growing the timber thereon, but denied that if such was done the appellants thereby acquired the exclusive right to said timber and the exclusive right to harvest the same for their own use and benefit. An agreed statement of facts was executed and filed by the parties.

On the hearing of the cause, the chancellor rendered a decree finding that the appellees were entitled to the relief prayed for in their original bill, and enjoining and restraining the appellants from cutting and removing the timber growing on the land, and from this decree the appellants prosecute this appeal.

The facts are not in dispute. The original lease for a term of 99 years was granted in the year 1852, 1853, or 1854. The original lease was not produced and the record of the lease was not available because the court-house and records of the county were destroyed by fire subsequent to the granting of the lease. It is conceded by all parties, however, that the lease was granted under the authority of and in conformity with Article 12, Chapter 9, of Hutchinson's Mississippi Code of 1848, the pertinent provisions of which are as follows:

"Whenever a majority of the resident heads of families, (minors not excepted), in each township, or fractional township, containing section number sixteen, or such section as may be reserved for the use of schools in lieu thereof, within this state, shall request the same, it shall be the duty of the trustees now in office, or who may hereafter be in office, to lease the said section of their respective townships to the highest bidder for the term of ninety-nine years, at the court-house of the county in which said section is located, between the hours of eleven o'clock in the forenoon, and four o'clock in the afternoon, by giving at least six weeks' notice by advertisement, inserted in a newspaper printed in the county, if there be one, and if not, by posting up the same at three of the most public places of the county: Provided, That said trustees may divide and lease said section in lots of not less than eighty acres, if they should deem the same most advantageous. And provided also, That in the event there should be one or more townships which does not contain population sufficient to elect trustees as is provided for by law, that the board of county police

of the county in which the same is situated, shall lease the said section according to the provisions of this act, and in all other respects perform the duties required of said trustees.

"The aforesaid leases shall be made on a credit of one, two, three, and four years, and it shall be the duty of said trustees to take from the lessees, or highest bidders, bonds or promissory notes, payable to said trustees and their successors in office, to secure the payment of the money for said lease or leases in four equal annual installments, with such surety as they may approve; and said bonds or promissory notes, together with the interest accruing thereon, shall operate as a lien and special mortgage on the lands so leased, until the final payment for the same shall be made, and it shall be the duty of said trustees on the final payment of the money which may be due and not before, to convey the right, title, use interest, and occupation of said sections, or any such parts as may be leased to the lessee or lessees, for and during, and until the full end and term of ninety-nine years."

Caroline Anderson, the immediate ancestor of the appellants, acquired the unexpired lease by deed dated June 27, 1913, and continued to own the same until her death intestate on or about the 19th day of February, 1950, when the lease passed to her legal heirs, who are the appellants here. The original growth of timber on the land at the time of the original granting of the lease was removed long prior to the acquisition of the lease by Caroline Anderson, and the merchantable timber presently on the land has grown thereon since the acquisition of the lease by the said Caroline Anderson. Little, if any, of the land has been cultivated since Caroline Anderson acquired the lease. While the appellants alleged in their cross-bill that Caroline Anderson, upon acquiring the lease, elected to use the land for the growing of pine timber thereon and that it was and has since been used

exclusively for that purpose, and that appellants claim the timber as a crop produced upon the land by their immediate ancestor, and while these allegations of the cross-bill were not specifically denied by the appellees in their answer to the cross-bill, it is admitted by the appellants that the timber now on the land was not planted by them or their immediate ancestor, but was the result of natural reforestation or reseeding. Under these facts, the appellants claim the timber and the right during their tenancy to cut, remove, and sell the same for their own profit.

The question presented, therefore, is whether or not the owner of an unexpired lease on sixteenth section land can during his tenancy cut, remove, and sell the merchantable timber which has grown thereon during the tenancy as the result of natural reforestation or reseeding, claiming the same as a crop produced by the tenant.

The question is one of great importance, and if the answer thereto be in the affirmative, the decision will have a far reaching effect upon the resources from which sixteenth section funds are derived and preserved for educational purposes, since under such decision the holders of long-term sixteenth section leases will be permitted to denude the leased premises of all merchantable timber which has grown thereon as the result of natural growth during the tenancy and appropriate the same to their own use and profit. This disastrous effect upon the resources from which sixteenth section funds are derived is by no means controlling of the determination of the question, but it illustrates the seriousness of the question presented.

The solution of the question must be found in the character of the instrument under which the appellants claim, the relationship of the parties to the instrument, and the respective rights and liabilities of the parties thereto.

It is conceded that the instrument under which appellants assert their right to the timber was executed under the authority of, and in conformity with, Article 12, Chapter 9, of Hutchinson's Mississippi Code of 1848, heretofore above quoted. This statute provides only for a lease of the lands and the only power vested in the trustees thereunder is to lease the lands. The relationship of the parties to the instrument is, therefore, that of landlord and tenant. It is argued by the appellants, however, that because the statute provides that on final payment of the lease money it shall be the duty of the trustees "to convey the right, title, use, interest, and occupation of the sections or any such parts as may be leased to the lessee or lessees, for and during, and until the full end and term of ninety-nine years", it vests the appellants with greater or different rights than might accrue to them under an ordinary lease, including the right to use the land for profit in taking therefrom the merchantable timber which has grown thereon during the tenancy. This language of the statute has already been interpreted by this court adverse to the contentions of appellants in the case of Moss Point Lumber Company v. Harrison County, 89 Miss. 513, 42 So. 296, in which it was said:

"When the legislature used the language that the lessees should be vested with 'the right, title, use, interest, and occupation of said section,' it used the language in connection with the character of the estate which was authorized to be conveyed, which was a tenancy for years, a leasehold estate. It meant to convey, and did convey, only such right, title, use, interest, and occupation as went with the kind of estate conveyed. The whole act must be construed together. The parts of it cannot be separated and make the act mean a different thing from that which the whole act shows was intended. There is no authority given in the statute to do anything but lease this land. No person reading this statute could

possibly be misled into the supposition that he was getting a fee, when the statute said that it should be a lease, and when the conveyance made by the trustees only purported to be a lease. The very purpose of the legislature in saying that the land should be leased was to measure certainly the rights which every party taking the lease should get by the kind and character of conveyance which they authorized to be made to him. A lease has an accurate, definite, certain legal meaning, and by this legal meaning the rights of the lessees under this statute must be measured. Because this is public land, and because the lease is for ninety-nine years, and because the parties authorized by law to make the lease are public officers, no greater or different rights were conveyed by the lease than if it had been made by private parties for any number of years."

We therefore deal with the instrument under which appellants claim as a lease and we measure their rights accordingly. What then are the rights of a tenant for years with respect to commercial timber on the leased premises? This question has been answered by the prior decisions of this court. It is universally held that the cutting of timber for commercial purposes by a tenant for years is waste. Warren County v. Gans, 80 Miss. 76, 31 So. 539; Moss Point Lumber Co. v. Harrison County, supra, and authorities there cited. In the case of Learned v. Ogden, 80 Miss. 769, 32 So. 278, the court said:

"While the law of waste, as established in England, is modified by its transplantation to this country to suit the conditions of a new and uncleared country, and to allow a tenant for life to open wild lands for necessary cultivation or to change the course of agriculture without being liable for waste, yet the cutting down of trees for his mere profit is here, as there, considered waste. A tenant by the curtesy, as an incident to his estate, may take reasonable estovers of all kinds, and he may cut timber to pay taxes, or to improve the land, and when

so cut it belongs to the tenant, and not to the reversioner. But the cutting down by the tenant of trees for sale is waste, and the felling of trees by the tenant or others for a sale of them is an injury to the inheritance, for which the reversioners have their appropriate action. Trees, when felled, or severed from the soil, become personal property, in which the tenant in possession has no interest when cut for profit; and the reversioner may maintain his action for the possession of the property, or for damages therefor, in the same manner and with like effect as if he were the owner of the estate in possession. A tenant by the curtesy in possession has no authority, as such, to represent the reversioner, or to bind him or his estate in any manner whatever. Notes to Allen v. De Groodt (Mo. Sup.) 14 Am. St. Rep. 628, et seq. (s. c. 11 S. W. 240); notes to Miles v. Miles, 64 Am. Dec. 367, et seq.; 4 Kent, Comm. 74, et seq."

In the Gans case, supra, the court said: "The rigid rule of the common law that a tenant of a particular estate could not cut timber, except for estovers only, is in many jurisdictions modified, so as to allow him to cut off timber for clearing so much of the estate as the needs of his family may require for their support, though the timber be destroyed thereby. And he may clear for cultivation such portions of it as a prudent owner in fee would clear for that purpose, provided he leaves enough timber and wood as may be necessary for the permanent use and enjoyment of the inheritance. His right to open and clear for cultivation wild and uncultivated land is that of a prudent owner, having regard to its amelioration as an inheritance. When the particular tenant cuts timber in the process of clearing the land for immediate cultivation, he can appropriate it or its proceeds to his own benefit; but he cannot cut the timber for sale without making himself amenable for waste. When the timber is cut by the tenant or others unnecessarily or unlawfully, the right of the reversioner

or remainderman at once attaches, and he may bring an action on the case in the nature of waste for his damages, or he may bring trover or replevin for the timber severed from the inheritance.''

It is argued by appellants, however, that the Moss Point Lumber Company case, supra, and the Gans case, supra, and like decisions of this court, were cases in which the timber cut by the tenant was on the land at the time the lease was granted, and this is true. But it does not alter the principle which determines the commission of waste by a tenant for years. ''What constitutes waste is determined by the consideration as to whether or not the act did not result in an injury to the inheritance.'' Moss Point Lumber Company v. Harrison, supra. Will the cutting and removal by the appellants of the merchantable timber which has grown on the land during the tenancy as the result of natural reforestation or reseeding result in an injury to the inheritance? We answer this question in the affirmative. It certainly can not be argued with reason that an injury to the realty is not an injury to the inheritance or to the reversionary interest in the estate. In the case of Queen City Hoop Co. v. Barnette, et al., 127 Miss. 66, 89 So. 819, this Court held that standing timber is real estate, and in the case of Harrell v. Miller, 35 Miss. 700, it was held that the term ''land'' embraces timber growing upon the land. It must be remembered that the appellants here admit that the timber in question was not planted by them but that it grew upon the land as the result of natural reforestation or reseeding. In other words, it was produced by the powers of nature alone. It therefore became a part of the ''land'' and any unauthorized destruction of it by the tenant will constitute an injury to the inheritance and will constitute waste. Appellants argue, however, that because the timber which was on the land at the time the lease was granted was removed and this timber has grown there since, its removal will not con-

stitute an injury to the reversionary interest because this particular timber was not on the land at the time the lease was granted. This argument overlooks the fact, however, that the timber which has grown on the land as the result of natural growth has become a part of the realty and, therefore, belongs to the owner of the reversionary interest. It has become a part of the "land" and of course belongs to the owner of the reversion. The argument is more completely answered in the case of Moss Point Lumber Co. v. Harrison, supra, wherein the Court said:

"If at the beginning of this lease the timber had been valueless and the tenant had destroyed it, he would not have been guilty of waste. If the timber had stood upon the land, and the tenancy had been in existence for forty years, and the timber, from being valueless, had become valuable for commercial purposes, and the tenant should undertake to destroy it, or cut it for purposes of sale, or use it beyond such measure as a tenant for years might lawfully use it, he would be guilty of waste."

We find no distinction in a case where the timber is valueless at the beginning of the lease and thereafter grows into commercial timber, and in a case where timber not in existence at the time of the lease thereafter grows upon the land and becomes commercial timber as the result of natural reforestation or reseeding. If the cutting of the timber in the former case constitutes waste, then we are of the opinion that the cutting of the timber in the latter case likewise constitutes waste.

Appellants seek to apply with some relevancy our reforestation statutes to fortify their contention, but we are unable to find in these statutes any pertinency to the question here presented. The rights of the parties here are controlled by the kind and character of the instrument under which they claim and there is nothing in our reforestation statutes which enlarges or abridges those rights.

Finally, appellants contend that the timber on the land is a crop which has been produced and matured during the term of the lease and that they have the right to harvest and sell it for their own use and benefit. Again appellants are confronted by their own admission that they did not plant the timber but that it grew upon the land as a result of natural reforestation or reseeding. In its final analysis, the contention of the appellants is that they are entitled to the timber as a crop because it grew upon the land during the tenancy, notwithstanding its growth was the result of natural reforestation or reseeding. We find no basis for holding that a tenant under a sixteenth section lease may stand by for a period of approximately forty years and watch timber grow through the processes of nature to commercial size and then claim the timber as a crop upon the land. It may be said as a matter of common knowledge that there is not a ninety-nine year sixteenth section lease now in existence where the timber on the leased premises at the time the lease was granted has not been removed and where the timber now on the leased premises has not grown there during the tenancy. Such a holding would result in wholly denuding the leased premises under such leases of the timber thereon, and unjustly depriving the beneficiaries of sixteenth section school funds to which they are entitled. It may be said in passing that it is significant that although Caroline Anderson, the immediate ancestor of appellants, acquired the lease in 1913 and lived until 1950, a period of 37 years, more than long enough for the timber in question to become merchantable timber, she apparently asserted no right to the timber as a crop or otherwise, or the right to remove and sell the same for her own profit and no such right was asserted by her heirs, the appellants here, until about a year after her death.

We are further of the opinion that the lease under which appellants claim carries with it no right to use

the leased premises for the purposes of growing timber thereon as a crop, and such was the construction placed by this court on the same character of lease in the Moss Point Lumber Company case, supra, when the Court said:

"It is argued in this case that because of the allegation in the bill that the nature and character of the soil makes the land unfit for cultivation, and that its only value consists in the merchantable timber standing on it, it was intended for the lessee to use it for that purpose. In answer to this we state that the usual purposes for which lands are leased are agricultural purposes, and, unless the contrary be stipulated in the lease, the lease of the land carries with it only such rights as go with ordinary leases. The original lessees of the land were the best judges of what use the land could be subjected to, and in taking the lease they are conclusively presumed to have taken it with such rights as go with a lease of land, and the right to cut and sell the timber is not such a right as goes with the lease."

In the light of the interpretation which we have heretofore given to this character of lease, we think it was not contemplated that the crops which the tenant was entitled to produce and remove from the leased premises should be other than those embraced in the more general signification of the term. ██ ██ "The word 'crops', in its more general signification, means all products of the soil that are grown and raised annually and gathered during a single season." 25 C. J. S., page 1. In the case of Woods v. Pace, 164 Miss. 187, 143 So. 471, we called attention to the modern tendency in decisions to treat the fruit of growing trees which have been cultivated and made to yield increase by labor and fertilizer by the tenant, as within the classification of matured crops, and to so classify also trees and shrubs grown in a nursery for the purposes of sale. Pine trees, however, which have become of commercial size as the result of the powers of

nature alone are not within such classification. They are a part of the realty and their removal by the tenant for the purposes of sale will constitute waste unless the contrary be stipulated in the lease. ■■ The legislature has never authorized the lease of sixteenth section lands for the purpose of growing commercial timber thereon, and that the legislature deemed such authority necessary is indicated by the fact that the legislature deemed it necessary to enact Sec. 6599 of the Mississippi Code of 1942, authorizing the lease of sixteenth sections for turpentine or pasturage purposes. The policy of our law to preserve for the support of township schools the timber on sixteenth sections is further indicated by the enactment of our statutes providing that no timber shall be cut or used by the lessees of such lands except for fuel and necessary repairs and improvements.

Appellants present no authority in support of their contentions and frankly admit that they have been unable to find any.

In view of the interpretation which this Court has heretofore placed upon the character of lease here under review, and the principles heretofore enunciated by this Court, with respect to the rights and liabilities of the parties under such character of lease, and in the light of the views hereinbefore expressed, we are of the opinion that the contentions of the appellants are untenable, and that the chancellor was correct in finding that the prayer of the original bill should be granted, and in entering a decree enjoining and restraining the appellants from cutting, removing, and selling for profit the timber on the leased premises.

The decree of the court below is accordingly affirmed.

Affirmed.

*McGehee, C. J.*, and *Roberds, Kyle, Arrington,* and *Ethridge, JJ.*, concur.

*Hall, J.*, dissents, and *Lee* and *Lotterhos, JJ.*, took no part.

HALL, J., dissenting.

I am impelled to register my dissent from the views expressed in the controlling opinion in this case. Appellants own the unexpired portion of a ninety-nine year lease on the lands in question. This lease was granted under Article 12, Chapter 9, Hutchinson's Mississippi Code of 1848, which specifically provides that when the consideration for such lease has been paid "it shall be the duty of the trustees . . . to convey the right, title, use, interest and occupation" of the leased lands "for and during, and until the full end and term of ninety-nine years." It is my view that under the quoted statute the holder of such a lease has the unlimited use of the land for the stated period. The statute does not limit the use to agricultural purposes only. The lessee may use the land for any purpose. He may build a home or a factory on it. Many towns and cities in Mississippi are built on sixteenth section lands which are under ninety-nine year leases. On these lands are found residences, mercantile establishments, filling stations, power plants and factories of various kinds, with not one square foot of an entire section being devoted to agricultural purposes.

In the case at bar the record shows by agreement that the virgin timber on the land in question had all been removed long before the ancestor of appellants acquired the unexpired portion of the lease in 1913. Instead of using the land for the planting and growing of annual crops the owners of the lease preferred to use it for the growing of timber, and the timber now on it has grown since that date. During all these intervening forty years the appellants and their ancestor have paid the taxes on the land with not one dime of return from the land if they are to be deprived of the right to remove the timber. The State, the county, and the schools of the county have reaped the benefit of the taxes thus paid for the sole purpose of preserving the lease while the

land was producing the timber in question. Having paid the taxes for this long period it does not appeal to my sense of right or justice to say that appellants can have nothing from the land simply because they used it for growing timber instead of cotton or corn or other annual crops.

The authorities cited in the majority opinion with reference to timber growing on sixteenth section lands apply only to virgin timber—timber that was on the land when the lease was granted—and we have uniformly held that the holder of a lease has no right to sell such timber for commercial purposes. But that is not the situation presented in the instant case. Here we are dealing with a crop of timber which was produced during the term of the leasehold and it wholly begs the question to say that timber is not a crop. Our statute on reforestation specifically refers to timber as a "wood crop." Paragraph 3, Section 6023, Code of 1942. Up and down any highway in South Mississippi numerous tracts of second growth timber will be seen with painted signs designating such tracts as "Tree Farm." These trees were not produced by the labor of man but by the hand of nature. It is utterly unrealistic to say that in this section of the country under present day conditions the growing of timber is not agriculture in its broader sense as commonly understood. In the case of United States v. Turner Turpentine Co., 111 F. 2d 400, the Court of Appeals for the Fifth Circuit said: "Definitions of agriculture in standard texts and treaties and in decisions in these latter years have had the widest content. . . . Webster's Unabridged Dictionary, 1935, declares that in a broader sense, agriculture includes farming, horticulture, forestry, dairying, sugar making, etc. The Encyclopedia Brittanica, 14th Edition, Forestry as a Science, declares: 'the science underlying the growing of timber crops is therefore nothing but a branch of general plant science,' while the Cyclopedia of American Agriculture

says of forests 'if agriculture is the raising of products from the land, then forestry is a part of agriculture'." The opinion in that case cites Sancho v. Bowie (1 Cir.) 93 F. 2d 323 which holds that in the broad sense agriculture includes forestry, and Forsythe v. Village of Cooksville, 356 Ill. 289, 190 N. E. 421, which also holds that agriculture is an indefinite word and in its broad sense includes forestry. The Turner Turpentine case was cited with approval by the Supreme Court of Florida in the case of Florida Industrial Commission v. Growers Equipment Co., 12 So. 2d 889.

The majority opinion proceeds upon the statement that to permit the removal of timber which has grown upon sixteenth section lands during the tenancy will have a disastrous effect upon the resources from which sixteenth section funds are derived. I cannot agree with such a position. Again we must be realistic. There are thousands and thousands of acres of sixteenth section lands in this State which are not suitable for any purpose except the growing of timber. Most of the ninety-nine year leases have expired and these thousands of acres are lying idle and producing nothing. The sixteenth section school funds would benefit by permitting these lands to be leased for the growing of timber; they would obtain a rental from such lease as well as taxes on the land while the timber is growing. Timber today does not mean what it did fifty years ago. As this Court said in the case of Great Southern Lumber Co. v. Newsom Bros., 129 Miss. 158, 166, 91 So. 864: "Years ago, when practically the only use made of timber was to manufacture it into lumber, it was then held that merchantable timber was only those large sticks of wood squared or capable of being squared for building houses or vessels. Since that time, however, the uses of timber have multiplied; among other things is now that of manufacturing small timber into paper. We have these paper mills scattered over the country, and in their vi-

cinity there is always a market price for this small timber which can be manufactured into paper."

As a matter of fact there are four large mills in South Mississippi which use small timber, down to three inches in diameter, for the manufacture of paper, cardboard, and wallboard. The owners of these mills already own vast expanses of land on which they are growing timber for pulpwood purposes and which are not suitable for any other purpose. They are buying more and more of such lands every day. In many places they own lands all the way around sixteenth sections and they would gladly lease sixteenth section lands for the production of wood crops and thereby yield an income to the sixteenth section school funds, but under the holding of the majority in this case those lands will have to lie idle and bring no income to the schools. While in the present case the schools will reap the benefit from the timber grown on the lands in question under the care of appellants who have paid taxes on it and who have watched over it and prevented its removal by trespassers or its destruction by fire, nevertheless in the long run the schools over the State are going to lose rather than gain under this decision.