ROBERTSON, Justice.
This case originated in the Chancery Court of Stone County, Mississippi, where the Board of Supervisors of Stone County brought suit against Herman E. Bond and Sammy Bond: to enjoin them from cutting any timber on Section 16, Township 3' South, Range 10 West, Stone County, Mississippi; to require them to pay to the petitioner the value of timber already cut, together with any penalties provided by law; and to cancel of record the lease to each defendant. The petitioner contended that by cutting and selling timber from sixteenth section land, the defendants committed waste thereon and that under the authority of Section 6598-18, Mississippi Code 1942 Annotated (Supp.1966) it was entitled to maintain this action.
The chancellor dismissed the Petition for Injunction against Herman E. Bond, refused to enjoin Sammy Bond, but did require him to pay to the petitioner $600.04, the actual amount received by Sammy Bond for the timber cut and sold from his sixteenth section leasehold. The chancellor refused to cancel the lease of record to Sammy Bond but did admonish both Sammy Bond and Herman E. Bond not to cut any more timber off of the sixteenth section land unless such cutting was approved and supervised by the Mississippi Forestry Commission.
The Appellant, the Board of Supervisors of Stone County, Mississippi, assigned as error the following actions of the trial court:
(1) the dismissal of the petition against Herman E. Bond;
(2) the failure to cancel the leases of both Herman E. Bond and Sammy Bond;
(3) the failure to enjoin both defendants from the further cutting of timber on their respective sixteenth section leaseholds ;
(4)the fixing of damages at the amount actually received by Sammy Bond for the timber sold rather than the value as testified to by the management forester of the Mississippi Forestry Commission.
We are of the opinion that the chancery court was correct in dismissing the petition for injunction against Herman E. Bond, and, under the peculiar circumstances of this case, was correct in fixing damages to the leasehold for waste committed at the actual amount received by Ap-pellee Sammy Bond. We, therefore, affirm the judgment of the trial court in these particulars.
We are of the opinion that the chancery court was in error in not ordering the cancellation of record of the sixteenth section lease to Sammy Bond.
There was no direct evidence that Herman E. Bond authorized, permitted, or knew anything about the cutting of one and one-half cords of pulpwood on the northeast quarter of the northwest quarter of Section 16. Herman E. Bond was not called as a witness, and Sammy Bond testified that he had not been on the land leased to his father, had not authorized any cutting on it, and only knew of the cutting thereon by hearsay.
The appellant contends that even though in their joint answer, both defendants generally denied all the allegations of Paragraph VI of the Petition, that both defendants specifically admitted the cutting of timber on their respective leaseholds in their answer to Paragraph VIII of the Petition, and also in Paragraph XI of their Answer, wherein they affirmatively set forth that the cutting of timber was under an agricultural lease, constituted an improvement to the land, and was not waste. The appellant further contends that both defendants admit the wrongful cutting when they say in Paragraph XI that:
“the defendants show that they stand ready to divide the net proceeds from *802 the sale of all timber from this land with the Board of Supervisors of Stone County, Mississippi, and would show that the proceeds from the sale of this timber have been partially used to improve the premises and it is planned that the balance of the money will be turned back into the land.”
Section 1290, Mississippi Code 1942 Annotated, says in part:
“Pleas in chancery are hereby abolished and every defense heretofore presentable by plea shall be made in the answer; and the answer may state as many defenses, as in law or in fact, the defendant may have to the bill or petition or to any material part or parts thereof.”
We think that the defendants were entitled, under the provisions of this statute, to set forth every defense that they concluded they had, whether consistent with other defenses or not, without running the danger of being accused of specifically admitting what they had generally denied in other parts of their Answer.
We feel also that the following language of Section 1291, Mississippi Code 1942 Annotated (Supp.1966):
“A denial by the defendant by reference to a designated paragraph (in the bill of complaint) shall be deemed a sufficient denial of the allegations of that paragraph except such as are specifically admitted.”
has reference to those allegations of a particular paragraph specifically admitted immediately following the general denial by reference to that particular paragraph of the bill of complaint or petition. In other words, a complainant can not use an answer of a defendant to one designated paragraph of a bill of complaint as an admission of the allegations of another paragraph which defendant has already generally denied.
On March 6, 1882, the Board of Supervisors of Harrison County, Mississippi, (out of which county, Stone County was subsequently carved) executed an agricultural lease of Section 16, Township 3 South, Range 10 West, to De Kalb Bond. For this lease of 640 acres for 99 years, De Kalb Bond, the highest bidder, bid the munificent sum of $125 to be paid in four equal annual installments of $31.25 each, together with ten per cent per annum interest from date until paid. By mesne conveyances, Herman E. Bond acquired the unexpired leasehold interest in the N 14 of the NW )4 and NW 14 of NE y4 of said Section 16, and Sammy Bond acquired the unexpired leasehold interest in the S 14 of NW of said Section 16.
The testimony is uncontradicted that Sammy Bond authorized the cutting of timber from his sixteenth section leasehold and that he received $600.04 for the timber cut. Sammy Bond finally stated, after persistent questioning by his counsel, that he authorized the cutting of timber from his leasehold in order to clear it for pasturage.
It is interesting to note that it was not until 1924 that the legislature authorized “[t]he board of supervisors having control of any sixteenth section of land” to lease it for “pasturage purposes for a term not exceeding five years.” See section 6599, Mississippi Code 1942 Annotated.
Up until that time, boards of supervisors could only lease for agricultural purposes. In 1958, the legislature passed a more elaborate act granting to boards of supervisors the authority to sell timber and also to lease for oil, gas, and other minerals sixteenth section lands. This act, Section 6598-18, Mississippi Code 1942 Annotated (Supp.1966), provides as follows:
“In all leases of sixteenth section land made by the board of supervisors, whether such leases be original leases or extensions of existing leases, title to all timber, minerals, oil and gas on such lands shall be reserved, together with *803 the right of ingress and egress, to remove same, whether such provisions be included in the terms of any such lease or not, and no timber shall be cut and used by the lessees except for fuel and necessary repairs and improvements on the leased premises. The county board of supervisors, notwithstanding the fact that such land may have been leased for other purposes, shall have the right, from time to time, to sell all merchantable timber on such lands in the manner hereinabove provided for. In all cases where leases are outstanding at the effective date of this act and have at least five (5) years remaining of the term thereof, wherein the right to sell timber has not been reserved, either expressly or by operation of law, the board may, by agreement with the lessee, sell such timber under the procedure herein set out. In all such cases the forestry commission shall only cause to be marked for cutting such timber as, in its judgment, should be harvested in the best interest of the reversionary estate and the board may agree to pay to the lessee a portion of the proceeds of such sales, from time to time, not to exceed fifty per cent (50%) thereof, after the deduction of the fifteen per cent (15%) escrow money, hereinbefore mentioned, and all other costs of the sale. The county board of supervisors shall also have the right to lease said lands for mineral, oil or gas exploration and development in the manner provided by law and the board of supervisors shall reserve the right to grant or sell rights of way across any of said land for a road, highway, railroad or any public utility line, provided only that the leaseholder be paid a reasonable rental for the unexpired term of his lease by the grantee of such right of way. If any lessee of any such sixteenth section land shall commit, cause to be committed or permit the commission of any act of waste on any sixteenth section lands under lease to such lessee, then such lease shall thereupon, as to such lessee, cease and terminate and shall thenceforth be null and void, and the county board of supervisors shall have the right to institute an action in any court of competent jurisdiction to secure the cancellation of same of record to recover damages for such waste and to maintain an action in ejectment to recover possession of the same. To this end, the county board of supervisors is hereby authorized and empowered to employ competent counsel to institute and maintain any such action or actions on behalf of the board.” (emphasis added).
Under this law, if waste has been committed or permitted, the cancellation of a sixteenth section lease is mandatory and automatic. There is nothing optional about it. So the only question that must now be resolved is whether waste has been committed or permitted by Sammy Bond on his leased sixteenth section land. What constitutes waste has long since been decided by this Court.
In the case of Warren County v. Gans et al., 80 Miss. 76, 31 So. 539 (1902) we held that the tenant under a 99-year agricultural lease of sixteenth section lands could not cut timber for sale without making himself amenable for waste. This rule was reiterated, restated, and reinforced in Moss Point Lumber Company v. Harrison County, 89 Miss. 448, 513, 526, 42 So. 290, 296, 300 (1906). Then later in the case of Bernard et al. v. Board of Supervisors of Jackson County et al., 216 Miss. 387, 62 So.2d 576 (1953), this Court said:
"It is universally held that (Hn 2) the cutting of timber for commercial purposes by a tenant for years is waste.

“But the cutting down by the tenant of trees for sale is waste, and the felling of trees by the tenant or others for a sale of them is an injury to the inheritance, for which the reversioners have *804 their appropriate action.” Id. at 396r-397, 62 So.2d at 580 (emphasis added).
In the Bernard case, the Court, in answering the contention that the sixteenth section land in question was not suitable for cultivation, but was only suitable for growing timber, said:
“ ‘It is argued in this case that because of the allegation in the bill that the nature and character of the soil makes the land unfit for cultivation, and that its only value consists in the merchantable timber standing on it, it was intended for the lessee to use it for that purpose. In answer to this we state that the usual purposes for which lands are leased are agricultural purposes, and, unless the contrary be stipulated in the lease, the lease of the land carries with it only such rights as go with ordinary leases. The original lessees of the land were the best fudges of what use the land could be subjected to, and in taking the lease they are conclusively presumed to have taken it with such right as go with a lease of land, and the right to cut and sell the timber is not such a right as goes with the lease.’ ” (emphasis added).
In the case at bar it is not disputed that the original 99-year lease, which is still in effect, was an ordinary agricultural lease. Therefore, the cutting and selling of timber therefrom would be waste. It is not denied, in fact, it is undisputed that Sammy Bond did authorize the cutting of timber on his sixteenth section leasehold; it is also undisputed that he received and pocketed the proceeds therefrom.
Under the express terms of the statute, when waste has been committed, the lease of such sixteenth section lands, as to such lessee, is automatically can-celled and ceases and terminates and, as the statute says “shall thenceforth be null and void.”. That is the situation with reference to Sammy Bond’s leasehold interest in the S *4 of the NW of Section 16. That lease was automatically cancelled, and is now null and void.
It remained only for the Board of Supervisors to bring an appropriate action to secure the cancellation of the lease of record. This, the Board of Supervisors has done, and the appellant was entitled to a decree declaring this lease to Sammy Bond cancelled of record.
The judgment of the lower court is affirmed, as to the dismissal of the petition against Herman E. Bond, and in ordering Sammy Bond to pay to the Board of Supervisors of Stone County the sum of $600.04; but the judgment of the lower court is reversed and judgment rendered here can-celling of record the sixteenth section lease to Sammy Bond. While the appellant would be entitled to an injunction against Sammy Bond if the lease were continued in effect, such an injunction would be sur-plusage where, as here, the lease has been automatically cancelled and is now can-celled of record.
Judgment affirmed in part, and reversed in part and rendered as hereinbefore set forth.
GILLESPIE, P. J., and JONES, INZER and SMITH, JJ., concur.