750 So.2d 567 (1999)
TWIN STATES LAND & TIMBER COMPANY, INC., Appellant,
v.
Glen CHAPMAN and John Alex Thornhill, Appellees.
Glen Chapman, Appellant,
v.
John Alex Thornhill, Appellees.
No. 1998-CA-01191-COA.
Court of Appeals of Mississippi.
November 16, 1999.
Rehearing Denied January 25, 2000.
*568 Walter T. Rogers, Meridian, Attorney for Appellant.
John E. Howell, Henry Palmer, Meridian, Attorneys for Appellees.
BEFORE McMILLIN, C.J., MOORE, AND THOMAS, JJ.
McMILLIN, C.J., for the Court:
¶ 1. This case involves a dispute between the owner of a remainder interest in a tract of real property and the life tenant. The dispute is over the life tenant's authority to cut and remove timber from the tract without the consent of the remainderman. The remainderman also sought to impose liability against the timber company harvesting the timber under contract with the life tenant. The underlying issue on which the case turns is whether a life tenant (and those acting under authority of the life tenant) may be compelled to respond to the remainderman for those statutory penalties set out in Section 95-5-10 of the Mississippi Code. We conclude that such an action may not be maintained, but that a remainderman's sole remedy in such a situation is a common law action for waste. Because the judgment in this case was improperly calculated under the highly penal statute founded on principles of trespass rather than under the law of waste, we reverse and remand.
¶ 2. A second issue raised in the appeal involves the enforceability of an indemnity clause in the contract between the life tenant and the timber company which the chancellor found unenforceable. We reverse and remand as to that issue, also.

I.

Facts
¶ 3. In 1988, John Alex Thornhill conveyed to his cousin, Glen Chapman, a life estate in seventy-six acres of unimproved land in Clarke County. At the time of the conveyance, some part of the land had been planted by Thornhill in pine, some part of it was open land, and approximately forty acres of the tract consisted of a naturally-occurring stand of mixed pine and hardwood.
¶ 4. In 1996, after giving notice to Thornhill of his intentions but without having obtained Thornhill's consent, Chapman entered into a timber cutting contract with Twin States Land & Timber Company, Inc. The contract purported to give Twin States the right to harvest the merchantable hardwood timber from the forty acre stand of mixed hardwood and pine. Twin States had cut approximately four acres of the tract when the company halted work on demand of Thornhill.
¶ 5. This litigation was actually commenced by Chapman, who sued Twin States for the purchase price of the timber cut and removed prior to the cessation of the harvesting operation. Thornhill was joined as a necessary party on motion of Twin States. Thornhill then filed pleadings to assert a claim against Chapman and Twin States for wrongfully harvesting the timber. Thornhill confined his request *569 for relief to a claim for the statutory damages authorized by Section 95-5-10 of the Mississippi Code. He later filed an amended complaint as to Chapman only, alleging that the cutting constituted waste and seeking to enjoin Chapman from any further activities of this nature.
¶ 6. At trial, Chapman based his right to harvest the timber without the consent of the remainderman, Thornhill, on several theories. They included (a) a claim that the timber proceeds would be spent toward his normal living expenses, a practice permitted to the life tenant under the doctrine of estovers, (b) a claim that the tract was in operation as a timber farm at the time his tenancy was created, thereby permitting him to continue to so operate the tract and receive the periodic income thus produced, and (c) an alternative claim that the harvesting of the hardwood from this particular tract was nothing more than an act of good husbandry in managing the property because the removal of these older, slow growing trees permitted more rapid growth of the remaining pine as well as the natural regeneration of the tract in additional faster-growing and more valuable pine trees.
¶ 7. Uncontradicted evidence indicated that, under the timber harvesting contract, Chapman would have received $4,648.42 for the timber cut and removed from the property, and that Twin States received the gross sum of $12,089.00 for the timber from the mill that purchased the wood. There was further evidence that Twin States had cut one or two loads of wood having a value in the range of $1,000 that were left lying on the ground after Thornhill's protest of the cutting. This timber had begun to rot and was of little or no value at the time of trial.
¶ 8. The chancellor concluded that Thornhill had made a case for liability under principles of common law waste against Chapman and Twin States but that Thornhill had not properly proven any damages under this theory. However, the chancellor further held that Thornhill had also proven his entitlement to the statutory damages set out in Section 95-5-10 of the Mississippi Code against both Chapman and Twin States, including the added penalties associated with wilful conduct in the cutting. She, therefore, calculated Thornhill's total claim under the statute to be $55,083 and entered a joint and several judgment against Chapman and Twin States in that amount.
¶ 9. Twin States, in addition to denying any liability to Thornhill, alternatively sought to enforce an indemnity clause contained in its contract with Chapman to compel Chapman, in the event of an unfavorable result in Thornhill's claim, to satisfy Twin States's obligation under the judgment as well as its defense costs. The chancellor refused to enforce the indemnity provisions of the timber cutting contract, finding the provision to be unconscionable under the facts of this case.
¶ 10. Twin States has appealed the judgment entered against it in favor of Thornhill. Additionally, and alternatively, Twin States has appealed the chancellor's decision not to compel Chapman to indemnify Twin States as to Thornhill's claim. Chapman has also appealed the judgment entered against him in favor of Thornhill, claiming that the facts do not warrant invoking the statutory damage provisions.
¶ 11. We reverse the judgment as entered and remand for such further proceedings as are appropriate in light of this opinion.

II.

Discussion
¶ 12. The first question before the Court in this appeal is whether a remainderman may recover statutory damages and penalties under Section 95-5-10 of the Mississippi Code from the life tenant (or those acting under authority of the life tenant) for alleged wrongful harvesting of timber. We determine that a remainderman may not maintain such an action, but *570 that his sole remedy is the common law action of waste.
¶ 13. The statute in question, Section 95-5-10 of the Mississippi Code, imposes liability on "any person [who] shall cut down... or take away any tree without the consent of the owner of such tree...." Miss.Code Ann. § 95-5-10(1) (Rev.1994) (emphasis supplied). The statute provides damages of double the value of the timber together with certain costs associated with reforestation of the land. Miss.Code Ann. § 95-5-10(1) (Rev.1994). Another provision of the statute provides that, if the cutting is wilfully done, or accomplished in reckless disregard for the rights of the owner of the trees, an additional amount of up to $55.00 per tree may be assessed as the owner's damage. Miss.Code Ann. § 95-5-10(2) (Rev.1994).
¶ 14. The Mississippi Supreme Court has said that an earlier version of the statute was highly penal in nature and, therefore, subject to strict construction in its application. Lochridge v. Hannon, 236 Miss. 687, 690, 112 So.2d 234, 236 (1959). We are satisfied that the present version of the statute is also highly penal and, therefore, understand our obligation to strictly interpret the statute's provisions in keeping with Lochridge.
¶ 15. The supreme court, because of the penal aspects of the statute, has been reluctant to apply it except in the clearest of cases. By way of example of the strict construction put on the statute, in Bollinger-Franklin Lumber Co. v. Tullos, the supreme court refused to apply the statute when one of several co-tenants was not a party to litigation begun by all remaining co-tenants to enforce the statute and no effort was made to prove that the harvesting of the timber was without the permission of this absent co-tenant. Bollinger-Franklin Lumber Co. v. Tullos, 124 Miss. 855, 859, 87 So. 486, 486 (1921). The court held that an essential prerequisite to maintaining such a suit was to show that "the cutting was done without the consent of the owners; therefore, if any one of the tenants in common consented to the cutting, then such consent would bar his recovery [under the statute] and also defeat all of the others." Id. at 859, 87 So. 486, 87 So.2d at 486. Thus, the court appeared to narrowly interpret the term "owner" to mean, in the case of divided ownership, all those persons enjoying any ownership rights in the property.
¶ 16. In the case now before us, there is no dispute that there was divided ownership of the fee title to the property in question, with both Chapman and Thornhill having certain limited ownership rights. It must also be conceded that Chapman, the life tenant, consented to the cutting of the timber. The question, then, becomes whether some distinction may be drawn between Chapman's status as a life tenant and the missing co-tenant in Bollinger-Franklin Lumber Co. v. Tullos that would require a different result in this case. We conclude that there is no such distinction to be drawn. In fact, insofar as standing timber is concerned, it appears that a life tenant enjoys a higher degree of ownership than does a co-tenant, thereby suggesting in even stronger terms the inapplicability of the statute.
¶ 17. Though a life tenant occupies a different ownership interest than a tenant in common, such a tenancy is a form of ownership of real property. GEORGE W. THOMPSON, COMMENTARIES ON THE MODERN LAW OF REAL PROPERTY § 1893 (1979). A life tenant holds the exclusive right to the use, possession, and enjoyment of the property during the term of the tenancy. Wright v. Sullivan, 207 Miss. 249, 256, 42 So.2d 185, 187 (1949). Trees growing upon the land are, until severed, a part of the real estate, and thus subject to the exclusive enjoyment of the life tenant to the total exclusion of the remaindermen. South Mississippi Elec. Power Ass'n v. J.F. Miller Timber Co., 314 So.2d 346, 348 (Miss.1975).
¶ 18. The life tenant, in the enjoyment of his tenancy, may harvest the *571 timber under certain circumstances without the consent or cooperation of the remainderman. These circumstances include (a) when necessary to raise funds to pay the taxes on the property, (b) to provide timber for repair of fences and other improvements on the property, and (c) such harvesting as is indicated in the proper management and preservation of the property. Threatt v. Rushing, 361 So.2d 329, 331 (Miss.1978); Board of Supervisors v. Gans, 80 Miss. 76, 31 So. 539, 540 (1901); Cannon v. Barry, 59 Miss. 289, 303 (1881). It is only when the life tenant has been found to be harvesting the timber solely as a commercial enterprise, thereby damaging the value of the remainderman's estate, that the life tenant may be enjoined from further cutting and also be made to respond in damages for the diminished value of the remainder interest under principles of common law waste. Threatt, 361 So.2d at 331.
¶ 19. Nevertheless, even in that circumstance, the life tenant's liability does not arise based upon his lack of any ownership interest in the unsevered timber comprising a part of the land. Rather, the liability arises because the life tenant has abused those ownership rights that arise under his tenancy to the detriment of the remainder estate.
¶ 20. An example of the dual nature of the ownership interest in timber during the existence of a life estate in real property appears in the case of South Miss. Electric Power Ass'n. v. J.F. Miller Timber Co., 314 So.2d 346 (Miss.1975). In that case, the remainderman conveyed the timber to a timber company without the life tenant joining in the conveyance. Id. at 347. A power company subsequently cut some of the timber to clear right of way and the timber company sought to obtain statutory damages for the cutting of the timber on the strength of its timber deed from the remainderman. Id. The supreme court held that the conveyance of the timber from the remainderman alone did not give the timber company good title to the timber, indicating that the joinder of the life tenant in a written conveyance was necessary to fully convey the present title to the timber. Id. at 347-48. Thus, the court refused to enforce the timber-cutting statute in a suit brought by a party claiming under the remainderman, primarily relying on the proposition that the remainderman does not have the present right to convey good title to standing timber. While we face the opposite situation in this case, the South Mississippi Electric Power Association case is helpful to understand the divided nature of ownership of the fee when a life tenancy is in effect.
¶ 21. Thornhill, in arguing for the applicability of the statute, places substantial reliance on the case of Learned v. Ogden, 80 Miss. 769, 32 So. 278 (1902). However, Learned v. Ogden does not involve a claim for statutory damages. Rather, it is an action for common law waste brought by the remaindermen against the life tenant for cutting approximately 30,000 cypress trees. Id. at 778-79, 32 So. at 278-79. Despite the fact that Learned v. Ogden does not involve a claim for statutory damages, Thornhill points to the language of the opinion stating that
[t]rees, when felled, or severed from the soil, become personal property, in which the tenant in possession has no interest when cut for profit; and the reversioner may maintain his action for the possession of the property, or for damages therefor, in the same manner and with like effect as if he were the owner of the estate in possession.
Id. at 779, 32 So. at 279. Certainly, these broad pronouncements, taken out of context, might be said to support a remainderman's right to pursue a statutory damage claim. However, it is important to understand these statements in the context in which they were offered. The supreme court at that time had under consideration an action based solely on common law waste. There is no indication that the remaindermen sought, as alternative relief, the statutory penalties for wrongful cutting *572 down of these cypress trees, even though the statute at the time provided a penalty of $15.00 per tree, which would have produced damages of $450,000, rather than the $75,000 total damages sought by the remaindermen. MISS.CODE OF 1906 Sec. 4977 Pg. 1341 (1906). In that light, we find that Learned v. Ogden offers little support for the proposition that a remainderman may seek statutory penalties for his life tenant's misuse of his limited right to the use and benefit of the standing timber on the estate, and we decline to read the quoted paragraph so broadly as Thornhill would have us do.
¶ 22. We have been cited to no reported cases in Mississippi where the remainderman was allowed to recover the statutory penalties against a life tenant alleged to have improperly harvested timber, and our independent research has revealed no such precedent. In a slightly different context, a tenant for years was made to respond in damages for waste for the harvesting of timber from 16th section school land held under a 99 year lease. Bernard v. Board of Supervisors, 216 Miss. 387, 62 So.2d 576 (1953). Again, there was no indication in this litigation that the owner of the remainder estate sought to recover statutory damages for the tenant's wrongful harvesting. The case discusses in some detail the circumstances in which a tenant may harvest timber from the estate, which, again points to the impropriety of invoking a statute that provides a remedy only against an entity having no ownership rights whatsoever in the timber. Id. at 395-396, 62 So.2d at 579-580.
¶ 23. Because a life tenant has some ownership rights in standing timber, which rights include the use, possession, and enjoyment of the timber together with certain limited rights to harvest the timber, we are satisfied that this penal statute, sounding in principles of trespass, has no application in these circumstances. If the life tenant is believed to be abusing his limited ownership rights in the estate to the detriment of the remainderman's future interest, the remainderman's remedy is a common law action for waste.
¶ 24. Though the remainderman's theory of recovery was incorrect, we are satisfied, as was the chancellor, that sufficient evidence was presented to make a case for waste. We disagree with the chancellor's conclusion that no proof of damages based on principles of waste was presented. There was sufficient proof of the value of the timber harvested from the premises to assess damages under the theory announced in Learned v. Ogden that the remainderman, upon the improper severance of timber and its conversion thereby to personalty, "may maintain his action for the possession of the property [timber], or for damages therefor...." Learned, 80 Miss. at 779, 32 So. at 279. Though Thornhill may not have properly pled an alternative claim for waste, we are satisfied that the parties, including both Chapman and Twin States, vigorously tried the question of the life tenant's right to harvest timber without the remainderman's consent and that the chancellor properly concluded that Thornhill ought to prevail on that question. For that reason, we do not think that Thornhill's failure to ask for the appropriate relief based on properly pled and fully proven facts ought to deprive him of any remedy. Instead, we conclude that Thornhill should be entitled to appropriate damages under the doctrine of waste. See M.R.C.P. 15(b) (issues not raised in the pleadings may be tried by express or implied consent), and see M.R.C.P. 54(c) ("judgment shall grant the relief to which the party in whose favor it is rendered is entitled by the proof and which is within the jurisdiction of the court to grant, even if the party has not demanded such relief in his pleadings....").
¶ 25. We, therefore, reverse and remand this case with instructions that the chancellor conduct an inquiry limited to assessing damages jointly against Chapman and Twin States based upon principles of common law waste, rather than the inapplicable *573 statutory damages that now form the basis for the judgment in this case.

II.

The Indemnity Clause
¶ 26. As its second issue, Twin States alleges that the chancellor erred in failing to enforce the provisions of the indemnity clause in its contract with Chapman. Under that clause, Chapman would be liable to Twin States for any losses occasioned by Thornhill's claim. Such relief would not relieve Twin States as to its direct liability to Thornhill, of course, but it would permit it the opportunity to recoup losses attributable to that judgment from Chapman.
¶ 27. The chancellor concluded that it would unconscionable to enforce that provision of the contract in view of the fact that Twin States proceeded with the timber harvesting after having obtained actual notice that Chapman held only a life estate in the timber.
¶ 28. As we have already observed, the fact that Chapman held only a life estate in the property does not, of itself, unequivocally establish his lack of authority to harvest some part of the timber without the remainderman's consent since it is beyond dispute that a life tenant possesses certain limited rights in that regard. Chapman claimed at trial, among other things, that his plan to harvest the hardwood was part of a long-term timber management strategy that would eventually enhance the overall value of the timber by opening up the area to faster growing pine. He presented some competent proof to the effect that removal of the stagnant, old growth hardwood from this area would be an act of good husbandry in the management of the timber on the estate. The chancellor rejected the notion, finding that the harvesting operation was nothing more than a commercial cutting operation primarily intended to produce immediate income and was not being undertaken as a part of longer range timber plan for the property.
¶ 29. Nevertheless, that was a question that remained unanswered until it was finally adjudicated in the appropriate forum. This Court can see no reason why Twin States should be charged with anticipating the eventual outcome of such a claim, so long as there was some arguable basis for it, if Chapman were willing to solely assume the risk of such an adverse outcome. Given the fact that a life tenant has certain rights to harvest the timber from the property comprising his life tenancy but also given the fact that the extent of the life tenant's right to act unilaterally might be the subject of legitimate dispute, we do not find it unconscionable that a timber company preparing to purchase the timber might insist upon indemnification as a condition to contracting with the life tenant alone. Merely learning that Chapman, as the prospective seller, owned only a life estate in the property did not unequivocally put Twin States on notice that it was not receiving good title to the timber since the answer to that question ultimately depended upon a number of factors not entirely decided by the state of the record title of the property.
¶ 30. Twin States and Chapman entered into an arm's length transaction that included this indemnity provision at a time when Chapman was already well aware of the fact that he possessed only a life tenancy in the property. Nothing Twin States subsequently learned concerning the state of the title was unknown to Chapman at the time of contracting. To hold that the enforcement of the indemnity provision would be unconscionable on these facts is, in effect, to create a duty on Twin States's part to advise Chapman of the imprudence of his agreeing to such a provision.
¶ 31. We find nothing unconscionable in the terms of the contract itself nor in Twin States's election to proceed with harvesting the timber in reliance upon Chapman's agreement to indemnify Twin States from any loss occasioned by the performance of the contract.
*574 ¶ 32. We, therefore, reverse and remand for further proceedings to determine the extent of Chapman's obligation to Twin States under the indemnity clause after the issue of the liability of both these parties to Thornhill is properly adjudicated. Again, we point out that Thornhill is not bound by the terms of this indemnity agreement, and, assuming he is successful in proving his damages for waste, he may proceed to collect his judgment from either Twin States or Chapman at his election. It then falls to Twin States and Chapman to resolve between themselves the issue of Chapman's indemnification obligations.
¶ 33. THE JUDGMENT OF THE CHANCERY COURT OF CLARKE COUNTY IS REVERSED AND REMANDED FOR A NEW TRIAL LIMITED SOLELY TO THE ISSUE OF ASSESSING THE APPELLEE THORNHILL'S DAMAGES RECOVERABLE AGAINST APPELLANTS TWIN STATES AND CHAPMAN UNDER PRINCIPLES OF COMMON LAW WASTE AND FOR A DETERMINATION OF THE EXTENT OF CHAPMAN'S OBLIGATION TO TWIN STATES TO INDEMNIFY IT FOR LOSSES OCCASIONED BY THE FAILURE OF CHAPMAN TO CONVEY MARKETABLE TITLE TO THE TIMBER. COSTS OF THIS APPEAL ARE TO BE DIVIDED EQUALLY BETWEEN CHAPMAN AND THORNHILL.
KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.