No. 30,598.

THE CAPITAL GAS & ELECTRIC COMPANY, a Corporation, *Appellant*, v. ROLAND BOYNTON, Attorney-general, *Appellee*.

No. 30,599.

THE WYANDOTTE COUNTY GAS COMPANY, a Corporation, *Appellant*, v. ROLAND BOYNTON, Attorney-general, *Appellee*.

No. 30,600.

THE GIRARD GAS COMPANY, a Corporation, *Appellant*, v. ROLAND BOYNTON, Attorney-general, *Appellee*.

No. 30,601.

THE NEWTON GAS COMPANY, a Corporation, *Appellant*, v. ROLAND BOYNTON, Attorney-general, *Appellee*.

No. 30,602.

THE ARKANSAS VALLEY GAS COMPANY, a Corporation, *Appellant*, v. ROLAND BOYNTON, Attorney-general, *Appellee*.

No. 30,603.

THE HUTCHINSON GAS COMPANY, a Corporation, *Appellant*, v. ROLAND BOYNTON, Attorney-general, *Appellee*.

No. 30,604.

THE WICHITA GAS COMPANY, a Corporation, *Appellant*, v. ROLAND BOYNTON, Attorney-general, *Appellee*.

No. 30,605.

THE PITTSBURG GAS COMPANY, a Corporation, *Appellant*, v. ROLAND BOYNTON, Attorney-general, *Appellee*.

No. 30,606.

THE UNION PUBLIC SERVICE COMPANY, a Corporation, *Appellant*, v. ROLAND BOYNTON, Attorney-general, *Appellee*.

No. 30,607.

THE WESTERN DISTRIBUTING COMPANY, a Corporation, *Appellant*, v. ROLAND BOYNTON, Attorney-general, *Appellee*.

No. 30,608.

In the Matter of the Application of L. L. ROESLE for Writ of Habeas Corpus, *Appellant*, v. ROLAND BOYNTON, Attorney-general, *Appellee*.

(22 P. 2d 958.)

Opinion filed June 10, 1933.

*Robert Stone, James A. McClure, Robert L. Webb, Beryl R. Johnson, Ralph W. Oman,* all of Topeka, and *Robert D. Garver,* of Kansas City, Mo., for the appellants.

*Roland Boynton,* attorney-general, *John G. Egan, W. C. Ralston* and *Dunkin Kimble,* assistant attorneys-general, *S. C. Bloss, Stewart Bloss,* both of Winfield, and *A. V. Roberts,* of Wichita, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: Ten of the eleven cases consolidated in this appeal are actions for injunction, and one is for a writ of habeas corpus. They were filed in the district court of Shawnee county and appealed to this court from the separate judgments and rulings of that court by the plaintiffs in the injunction actions and the petitioner in the habeas corpus proceeding.

The plaintiffs in the injunction actions are public utility corporations under the jurisdiction of the public service commission of the state of Kansas (now state corporation commission) doing business in ten different cities of Kansas in "the manufacture, purchase, supply and distribution of artificial and natural gas" and in "the production and supply of light, heat and power by electricity," as authorized by their several charters. Eight of these plaintiffs are Kansas corporations, one is a West Virginia corporation and one a Delaware corporation, both admitted to do business in Kansas.

The defendants in the ten injunction actions are Roland Boynton, attorney-general of the state of Kansas, and another defendant in each of the ten injunction actions is the county attorney, by name, in each of the ten counties in which the particular city lies, where such utility company does business.

The petitions allege that chapter 238 of the Laws of 1931 is unconstitutional and void for nine reasons, and that the attorney-general and the respective county attorneys are threatening to enforce the law which would result in a great loss, injury and possibly deprivation of liberty, and that there is no adequate remedy at law, concluding with a prayer that the court find that an actual controversy exists between the parties and that a declaratory judgment be entered determining and adjudging chapter 238 of the Laws of 1931 to be unconstitutional and void, and that the defendants and their agents and employees be enjoined and restrained from enforcing or attempting to enforce the provisions and penalties of the statute.

The nine reasons alleged and assigned in the petitions why the law is unconstitutional and void are as follows:

"1. Because of uncertainty and ambiguity in defining the act or acts attempted to be prohibited as the same are set out in section 1 thereof.

"2. Because it undertakes to deprive the plaintiff of certain of its rights, powers and privileges granted to it by its charter, without an express amendment to said charter and without including in the title to said act such amendment to its charter, contrary to section 16 of article 2 of the constitution of the state of Kansas.

"3. Because it deprives plaintiff of its property and property rights without due process of law, and denies it the equal protection of the law, all in violation of the constitution and laws of the state of Kansas and the fourteenth amendment to the constitution of the United States.

"4. Because said act constitutes an unreasonable and arbitrary exercise of the police power of the state, said statute not being in the interest of the public morals, safety, health and welfare.

"5. Because the subject matter of said act is not clearly expressed in its title.

"6. Because it undertakes to prevent the misuse of merchandising by public utilities by prohibiting the proper and lawful use of merchandising in connection with such business.

"7. Because said act contains more than one subject.

"8. Because said act attempts to vest the public service commission of the state of Kansas with certain powers and duties in respect thereto, all of which are not clearly indicated in the title.

"9. Because said act impairs the obligation of the contracts of plaintiff in violation of clause 1 of section 10 of article 1 of the constitution of the United States."

The defendants in their answers admit many of the formal allegations of the petitions, but deny that the law is unconstitutional or void for any of the reasons assigned, or any other reason, and allege that plaintiffs abuse the privilege of handling and selling merchandise and have attempted to and have in fact monopolized the business of selling merchandise along the lines prohibited by the act, that the act is in the interest of the public generally and their protection is a matter of public welfare.

The habeas corpus proceeding was brought by L. L. Roesle, an employee of the Capital Gas and Electric Company, doing business in Topeka, which company is one of the plaintiffs in the injunction actions. Roesle had been convicted in the court of Topeka, was fined and committed to the jail of Shawnee county for selling a hot plate used in burning gas for cooking purposes, it not being an article which had been owned by the Capital Gas and Electric Company of Topeka in manufacturing, distributing or selling its utility service or an article which was the direct product of the business of manufacturing or distributing said utility service, and in violation of the provisions of chapter 238 of the Laws of 1931 of the state of Kansas. Upon verified petition with appropriate exhibits, a writ was issued by one of the district judges of Shawnee county directed to C. L. Lavin, marshal of the court of Topeka, who made a return admitting the custody of the petitioner and setting up the conviction and sentence and validity of the law under which the petitioner had been convicted and sentenced, and prayed that the petitioner be remanded to his care and custody. This proceeding was by agreement consolidated with the ten injunction actions for hearing.

Evidence was introduced by plaintiffs and petitioner and then by defendants and respondent, and judgment was rendered in favor of defendants in the injunction actions and the respondent in the habeas corpus action, upholding chapter 238 of the Laws of 1931 as valid and constitutional and subject to enforcement by punishment under the penal provisions thereof. The temporary injunctions theretofore granted were dissolved and the writ of habeas corpus was denied and the petitioner remanded to the custody of the respondent. From these judgments the several plaintiffs in the injunction actions and the petitioner in the habeas corpus action appeal, assigning error as follows:

"I. The court erred in denying the application of the plaintiffs, and each

of them, for the temporary injunction and in dissolving the restraining order which had theretofore been issued.

"II. The court erred in denying the application of L. L. Roesle for a writ of habeas corpus and in remanding him to the custody of the officer.

"III. The court erred in not holding that the act of the legislature, commonly called the utility merchandising act, being chapter 238 of the Laws of 1931, was unconstitutional for the following reasons:

"1. Because of uncertainty and ambiguity in defining the act or acts attempted to be prohibited as the same are set out in section 1 thereof.

"2. Because it undertakes to deprive the plaintiff of certain of its rights, powers and privileges granted to it by its charter, without an express amendment to said charter and without including in the title to said act such amendment to its charter, contrary to section 16 of article 2 of the constitution of the state of Kansas.

"3. Because it deprives plaintiff of its property and property rights without due process of law, and denies it the equal protection of the law, all in violation of the constitution and laws of the state of Kansas and the fourteenth amendment to the constitution of the United States.

"4. Because said act constitutes an unreasonable and arbitrary exercise of the police power of the state, said statute not being in the interest of public morals, safety, health and welfare.

"5. Because the subject matter of said act is not clearly expressed in its title.

"6. Because it undertakes to prevent the misuse of merchandising by public utilities by prohibiting the proper and lawful use of merchandising in connection with such business."

The following is a full copy of chapter 238 of the Laws of 1931, including the title to the act:

"An Act providing for the protection of the public as consumers of electricity, gas and water from unjust charges in rates; aiding the public service commission at arriving at just rates; preventing unfair discrimination in wholesale, retail and manufacturing business of public utilities;. preventing misuse of merchandising by public utilities by making unlawful the manufacturing, leasing, distributing and selling of merchandise by public utilities; and relating thereto.

"Be it enacted by the Legislature of the State of Kansas:

"Section 1. From and after the first day of August, 1931, it shall be unlawful for any individual, firm or corporation engaged in the manufacturing, transporting, distributing or selling of heat, gas, water, electricity or electrical current to engage in the manufacture, wholesale or retail, by sale or lease, of any chattel, article, commodity or manufactured product, except those articles which have been owned by such utility company in manufacturing, distributing or selling its utility service, or those articles which are the direct product of the business of manufacturing or distributing said utility service.

"Sec. 2. The public service commission of the state of Kansas shall have the same powers in investigating complaints of the violation of section 1

hereof as is provided for in chapter 66 of the Revised Statutes for 1923, and all amendments thereto.

"Sec. 3. Any individual, firm or corporation guilty of violating any of the terms of this act shall be adjudged guilty of a misdemeanor and shall be fined not less than $100 nor more than $500 for every offense, and the manufacturing, wholesaling, retailing or leasing of each article so manufactured, wholesaled, retailed or leased shall be held to be a separate and distinct offense; and in addition to the penalty herein provided, any such individual, firm or corporation may be enjoined in the district court of any county in which such act is being committed by an action brought by the public service commission or by the state of Kansas, by and through the attorney-general or the county attorney, or by an interested person, from violating further the terms of this act.

"Sec. 4. This act shall be in force and take effect from and after its publication in the official state paper."

There is no question in these cases but that an actual controversy existed between these parties at the time of the trial before the district judge and still exists, so that the determination of the issues here involved comes properly under the provisions of the declaratory-judgment statute, R. S. 60-3127 to 60-3132.

One of the errors assigned by the appellants is that the trial court failed to hold the act unconstitutional because it deprives appellants of property and property rights without due process of law and denies them the equal protection of the law, in violation of section 1 of the bill of rights of the state of Kansas and the fourteenth amendment to the constitution of the United States.

A preliminary question for consideration before this constitutional question can be determined is, whether the right to engage in merchandising of appliances is implied in the purposes named in the charters of the plaintiff companies, which are for the distribution and sale of natural gas, because the use of such appliances and the sale of them for that purpose is incidental to the sale of gas and essential to the success of the business of the sale of gas and distribution of natural gas. The eight charters held by the plaintiffs do not contain specific provisions authorizing the companies to engage in merchandising appliances for the use of their utility product. This preliminary question in particular depends upon the facts as to the nature, character, growth and development of the utility business of these gas companies in the vicinities in which they are located. A quantity of evidence was introduced in the trial court by plaintiffs and defendants on this subject. It was not conflicting but was along different theories as to the progress and growth of the

utility business, the increased sale of merchandising appliances, and the effect upon the public generally and particularly those engaged in the sale of such merchandising appliances. While the trial court did not make findings of fact, denominated as such, yet the opinion filed by the trial court contains a summary statement of the evidence introduced by both parties which will fully meet the requirement of this opinion as to the facts in this case, as follows:

"This evidence shows that the Gas Service Company owns all of the stock of the ten plaintiff companies; that prior to 1925 the gas business was poor, and one of the companies, at least, was in the hands of a receiver; that the present ownership was acquired about that date and there was then established what is known as the 'new business departments'; that these departments of the plaintiffs, with funds of the company, bought merchandise consisting of gas appliances; that agents of the companies got contact with gas users and with gas prospects; that these agents solicited the users for a larger use and nonusers to use gas, by putting before them the economical and convenient features of the use of gas as a fuel for cooking and heating. In connection with this campaign for the use of gas the merits of the gas appliances sold by plaintiff companies and the convenience of the terms upon which they could be bought were laid before the prospect. It was a practice of the companies, at least in the larger cities, to have employees survey the premises of prospects and give them estimates as to the cost of heating with gas as compared with other fuel. If the prospect was sold on gas and purchased appliances from the plaintiffs, the companies serviced the appliances for a year.

"The appliances sold by the companies are kept on display at their central offices where customers paid their bills. The merchandise for all of the companies was bought by the parent concern, the Gas Service Company, on orders from the particular company. The price of the articles was marked up so that there was a fair difference between the purchase and selling price. The appliances were sold on time and on small monthly installments under sales contract retaining title in the company until wholly paid for with the right of repossession in the company in case of default. The monthly gas bill would be accompanied by a bill for the installments on the appliances. The expense of operating the 'new business departments,' including the purchase price of the merchandise, caused the departments to be operated at a loss, which loss is charged up as the operating expense of the companies and thus becomes a factor in its rate structure. Since the inauguration of this system the business of the gas companies using it has greatly increased, more customers are supplied and more gas is used by each customer, and it is the contention of plaintiffs this great increase in the business of the companies has been brought about by the activities of the 'new business departments.' Evidence was introduced by plaintiffs concerning its industrial customers and contract with them containing 'shut-off' clauses by which the companies were enabled, when domestic demand was heavy, to shut off the industrial concerns, thus giving them more gas with which to supply their domestic customers; that the

companies surveyed and made estimates for the installation of gas appliances for the particular uses of industrial concerns and employed engineers for this purpose, and sold such appliances to industrial concerns, and that such appliances were not such as could be supplied by merchants dealing in gas appliances, and it is the contention of plaintiffs that to prohibit the sale by plaintiffs of industrial appliances that it will lose these customers and would be deprived of disposing of its gas at a time of little demand on the part of domestic customers.

"Evidence was introduced on behalf of the defendants that industrial concerns could be supplied with gas appliances for their use by merchants other than the plaintiff companies. Defendants also claim that the increased use of gas since the inauguration of the 'new business departments' was not caused by this system but by the fact that the companies had for the first time a sufficient supply of gas, and on account of this the people generally have acquired a growing confidence that if they install gas they will always have it for their use. I am of the opinion that the 'new business departments' and also the increased supply of gas are both factors in the increase of gas consumption in the last half dozen years but am of the opinion that the activities of these departments is the greater cause. The evidence shows that the plaintiff companies have sold and are selling from eighty to ninety per cent of the gas appliances sold in the communities where they operate, and that since 1925 the total gross sales of appliances by Kansas companies have amounted to $4,992,000.00.

"The evidence shows that the appliances sold by plaintiff companies are safe and standard, many of them being carried in stock by the merchants in the community. They are sold at fair and reasonable prices, and the companies allow a flat rate for used appliances of the customers, which appliances are taken in as part of the purchase price. This rate is an arbitrary one and has no exact relation to the value of the appliances so taken in. The appliances sold by the companies are serviced by them, while those installed by the merchants are not serviced by the companies. On the whole the court is of the opinion that the selling of this merchandise by the plaintiff companies has been of benefit to them by causing an increased consumption of gas and also on account of the liberal terms of the payment to customers. The take-in rate on used appliances and the servicing of the appliances free by the companies has been of benefit to the gas users. The court is also of the opinion that merchants dealing in appliances could not and would never have brought about the increase in the use of gas, and that they could not and cannot afford to handle and sell appliances upon the same terms as these plaintiff companies."

In an opinion written by the late Justice Brewer in the case of *Whetstone v. Ottawa University,* 13 Kan. 320, it was held, where a chartered town-site company made a donation of many of its lots to a company proposing and promising to build a university outside of, but near the town site, that—

". . . . The purpose of securing improvements on the town site is not

simply that the improvements be there, but that thereby the property the corporation has to sell may be enhanced in value. . . . If the direct and proximate tendency of the improvements sought to be obtained by the donation is the building up of the town, and the enhanced value of the remaining property of the corporation, the donation is not *ultra vires.*" (p. 340.)

"Corporations may transact, in addition to their main undertaking, all such subordinate and connected matters as are, if not essential, at least very convenient, to the due prosecution of the former.

"A corporation organized for the purpose of 'manufacturing and supplying illuminating and heating gas' may not only supply the gas itself, but may also incidentally deal in such patented appliances and conveniences as will induce new customers to use gas, or old ones to use more." (*Malone v. Lancaster Gas, Light, etc., Co.,* 182 Pa. St. 309, syl.)

"In considering the question of a legitimate mode of extending a corporation's business in direct furtherance of its charter objects, much weight must be allowed to the judgment of the officers and stockholders of the company, and, while they will not be permitted, as against the commonwealth or a dissenting stockholder, to go outside of the legitimate corporate business, yet, where the act questioned is of a nature to be fairly considered incidental or auxiliary to such business, it will not be unlawful because not within the literal terms of the corporate grant.

"A corporation chartered for the purpose of supplying heat, light and power by electricity, may sell, as an incident to its business, electrical appliances, such as electric refrigerators, by means of which power is delivered to and utilized by its customers." (*Com. ex. rel., Aplnt., v. Phila. Electric Co.,* 300 Pa. St. 577, syl. ¶¶ 1, 2.)

Appellees cite among other cases the case of *Fifth Ave. Coach Co. v. New York,* 221 U. S. 467, where a coach company, organized in New York state and engaged in the business of transporting passengers on Fifth avenue of the city of New York, sought an injunction against the city to prevent it from enforcing an ordinance prohibiting such passenger transportation companies from advertising on the outside of their coaches, and the ordinance was upheld, but it contained a provision that nothing therein was to prevent coach companies from advertising the business in which they were engaged, but did prohibit them from engaging in the business of general advertising for hire as not being implied in their charters nor incidental to their business.

"The modern rule has been well stated thus: 'If that act is one which is lawful in itself and not otherwise prohibited, is done for the purpose of serving corporate ends and is reasonably tributary to the promotion of those ends, in a substantial and not in a remote and fanciful sense, it may fairly be considered within charter powers.'" (14a C. J. 256.)

In the case of *Wichita Gas Co. v. Public Service Comm.,* 126 Kan.

220, 268 Pac. 111, a gas rate fixed by the public service commission was the issue and the "new business expense" was considered by the court and treated as follows:

"There was other evidence, and the commission challenged particularly an item of $66,000 designated as 'new business expense.' The evidence was the company was faced with an alarming decrease in consumption of gas. The witnesses for the company and for the commission agreed financial success of the company depended on increasing consumption of gas. The `new business expense was incurred in putting into effect a plan for increasing gas consumption which was devised by Doherty years ago, and which has since been adopted by many public utilities. . . . The commission is not the company's business manager. The company has a business manager of its own, who must be allowed good-faith exercise of judgment, discretion, and initiative." (p. 225.)

Many well-known cases are cited by the attorney-general as to corporations undertaking to do things which were readily held not to be implied within their charter privileges nor incidental thereto, such as railroad companies selling coal, operating public warehouses and guaranteeing interest on bonds issued to build summer hotels. In line with the general rules referred to above we have no difficulty in approving the conclusion reached by the trial court on this point, to the effect that the sale of gas appliances by these plaintiff gas companies is intimately connected with and incidental to the sale and distribution of gas, and is an implied power of such companies because it directly and proximately tends to accomplish the general purpose for which these companies were incorporated.

It is claimed that if the charters of the plaintiff corporations can be construed as authorizing the sale of gas appliances, the legislature has the power to annul such right, and that the act now under consideration took away such implied authority. But that cannot be maintained because nowhere, either in the title or the body of the act, is there any intimation of amending or repealing any corporation law or corporation privileges or rights, and to be effective it must not only have been in the body of the act but also clearly expressed in the title thereof.

Appellants claim and insist that the act under consideration is unconstitutional as being in violation of section 1 of the Kansas bill of rights and of the fourteenth amendment to the constitution of the United States. Section 1 of the bill of rights is as follows: "All men are possessed of equal and inalienable natural rights, among which are life, liberty, and the pursuit of happiness," and the

last part of section 1 of the fourteenth amendment to the constitution of the United States is as follows: ". . . nor shall any state deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

In the consideration of this question the distinction must be plainly made between the power of the legislature to pass the act and the wisdom and justice of its doing so. In the case of *State v. Wilson,* 101 Kan. 789, 168 Pac. 679, known as the trading-stamp case, it was said:

"The question for our determination is not whether in our judgment the objections urged against the trading-stamp device, on which the statute is based, are sound, but whether they are so plainly unsound that they may confidently be characterized as unreasonable and capricious." (p. 796.)

This distinction brings into operation the police power of the legislature in making its enactments, a power which it is generally recognized to possess, and while such power includes all questions which affect the health, morals, safety and general welfare of the people, it is agreed in this case that the health, morals and safety of the people are not involved in the sale of gas appliances, and only the question of the general welfare of the people is involved. Under the heading of the general welfare of the people of the state, the attorney-general advocates the theory that the legislature was prompted to enact this law to prevent a monopoly, which might be proper in the exercise of its police regulation for the welfare of the public.

It should be noticed in the first place that this act, unlike the trading-stamp act, is not related to a questionable business, or something harmful to the best interests of the people. It concerns the sale and distribution of articles which everyone would properly wish to possess. They are all useful and necessary to the equipment and furnishing of a modern home. The evidence showed these articles were being sold and distributed at a fair and reasonable retail price, and were installed without expense to the purchaser, and the use of any that were complicated was made plain to the purchasers; also, old appliances were taken back in exchange at substantial prices. In none of these features can we discern anything detrimental to the welfare of the public.

The act is not a fair or reasonable attempt to regulate public utilities, as that could readily have been done through the public

·service commission, now the state corporation commission. Neither can the complaint that the loss on the sale of these appliances was taxed up as expense of the corporation and recovered through the collection· of an increased price for the natural gas furnished its customers be a matter for consideration here. The business of the state corporation commission is to see that such increase is not charged or any return of such loss permitted to be made in that way.

A monopoly is defined as the exclusive right, privilege or power of selling or purchasing a given commodity or service in a given market. These plaintiffs have no exclusive right or privilege concerning the sale of these appliances. Any merchant or individual can sell them. The effect of the law is to create a monopoly rather than prevent one. The obvious result of the enactment, if upheld and enforced, would be to limit the sale of such appliances to merchants and others whose present prices, according to the testimony, are as high as those of the plaintiff corporations. Is this, then, an exercise of police regulation in the interest of public welfare?

". . . to justify the interposition of the authority of the state in enacting police regulations, it must appear that the interests of the public generally as distinguished from those of a particular class require such interference, for it is a rule that police power cannot be invoked to protect one class of citizens against another class unless such interference is for the real protection of society in general." (6 R. C. L. 199.)

"The constitutional guaranty that no person shall be deprived of his property without due process of law may be violated without the physical taking of property for public or private use. Its capability for enjoyment and adaptability to some use are essential characteristics and attributes without which property cannot be conceived. Hence a law is considered as being a deprivation of property within the meaning of this constitutional guaranty if it deprives an owner of one of its essential attributes, or destroys its value, or restricts or interrupts its common, necessary, or profitable use, or hampers the owner in the application of it to the purposes of trade, or imposes conditions upon the right to hold or use it, and thereby seriously impairs its value." (6 R. C. L. 196.)

"As a general rule the valid exercise of the police power includes all things essential to the conservation of the public safety, public health, and public morals; but that rule is modified, in consideration of the rights of the private individual, to the protection of the public generally as distinguished from that of a particular class, and to the use of means reasonably necessary to accomplish the purpose and not unduly oppressive to individuals." (*United States v. Cohen,* 268 Fed. 420, syl. ¶ 3.)

". . . the legislature cannot, under the pretense of regulation, deprive

a utility of any of its essential rights and privileges, but all regulations must be in fact within the police power. Any regulation, therefore, which operates as a confiscation of private property or constitutes an arbitrary or unreasonable infringement of personal or property rights is void because repugnant to the constitutional guaranties of due process and equal protection of the laws." (51 C. J. 10.)

The evidence unmistakably shows the primary purpose of the appellants is to promote the sale of gas, and the ultimate fear of a monopoly is not well founded, because if a monopoly be acquired and prices be raised and quality diminished the quantity of gas used by consumers will be reduced.

We must not confuse this constitutional question with the right of the legislature to prescribe regulations for public utilities, to be enforced by the state corporation commission, even to the extent, in a matter like this, of denying a corporation a certificate of convenience to engage in the utility business unless it would agree to refrain from certain lines of business—for instance, the selling of appliances. That is far from the question here. Our question is whether this particular class of corporations can be singled out by statute and deprived of a right and privilege that belongs to all individuals and most other corporations and would be right and proper for them to perform. It appears to be strictly class legislation without any reasonable relation to the welfare of the public.

It may be observed here that the plaintiffs in these actions are all corporations, but the statute limits the rights of individuals and firms engaged in the utility business as well as corporations, a distinction between this case and the well-known cotton-gin case, *Crescent Oil Co. v. Mississippi,* 257 U. S. 129, which is limited in its consideration of the similar question there involved to the restriction and the relation of corporations only.

In the case of *State v. Haun,* 61 Kan. 146, 59 Pac. 340, an act which undertook to do away with the rule and custom of paying miners their wages in scrip and requiring all such wages to be paid in lawful money of the United States was made by statute to apply only to those mines where ten or more were employed, and it was held to be unconstitutional as being in violation of the fourteenth amendment in denying to persons the equal protection of the law.

A law of this state requiring all railroads of the state to transport soldiers for one cent per mile was, in the case of *In re Gardner,* 84 Kan. 264, 113 Pac. 1054, held to deny railroad companies the equal

protection of the law, when the country was not in the peril of war or similar general distress.

A city ordinance discriminating in the amount of license fees to be charged resident and nonresident bakers was held, in *Hair v. City of Humboldt,* 133 Kan. 67, 299 Pac. 268, to violate the fourteenth amendment by depriving the nonresidents of the equal protection of the law.

A statute which makes it unlawful to discharge an employee because he belongs to a labor organization was held, in *Brick Co. v. Perry,* 69 Kan. 297, 76 Pac. 848, to be void for the same reason.

It was held, in *Little v. Smith,* 124 Kan. 237, 257 Pac. 959, that—

"While the police power is wide in its scope and gives the legislature broad power to enact laws to promote the health, morals, security and welfare of the people, and further, that a large discretion is vested in it to determine for itself what is deleterious to health, morals or is inimical to public welfare, it cannot under the guise of the police power enact unequal, unreasonable and oppressive legislation or that which is in violation of the fundamental law." (p. 240. See, also, *Chicago Board of Trade v. United States,* 246 U. S. 231.)

Many cases are cited by the attorney-general upholding acts designed to regulate public utilities. As suggested above that might very properly be done, but the act here under consideration does not attempt to do so. Its sole purpose is to deprive certain utility companies of a general privilege, which is an implied power under their charters and incidental to their general business.

With no feature of public welfare actually involved the conclusion surely must follow that to deprive these plaintiffs of an implied power and privilege incidental to their general business is unreasonable, arbitrary, unjust and oppressive. Other individuals, firms and corporations can engage in merchandising these appliances, but this particular class cannot. They are deprived of the equal protection of the law. We therefore conclude that the act is unconstitutional as being in violation of the fourteenth amendment to the constitution of the United States.

The injunctions prayed for by the plaintiffs against the enforcement of this act should be allowed and a writ should be granted the petitioner in the habeas corpus case.

The judgments in the several cases are reversed and the causes are remanded with directions to issue injunctions and a writ in accordance with the conclusions herein reached and expressed.

DAWSON and HARVEY, JJ., dissenting.