ANTONIO ROIG, SUCRS., S. EN C., Petitioner, *v.* SUGAR BOARD OF PUERTO RICO ET AL., Respondents.

No. 1. Argued February 2, 1953.—Decided November 5, 1954.

*James R. Beverley, R. Castro Fernández* and *Francisco Castro Amy* för petitioner. *A. Torres Braschi* and *José E. Guzmán* for the Board. *F. Fernández Cuyar* for respondent Asociación de Colonos de Yabucoa.

Mr. Chief Justice Snyder delivered the opinion of the Court.

The question presented by this case is the validity of § 6(c) of Act No. 426, Laws of Puerto Rico, 1951, known as the "Sugar Act of Puerto Rico", which provides that "In those cases where portable tracks have been used by the central for the transportation of a *colono's* cane, the central shall be bound to furnish to the *colono*, without any cost whatsoever to the *colono*, the said portable tracks and the necessary rolling material; and it shall also be bound to pay to the *colono*, as hauling expenses, five (5) cents for each ton of cane."

Sugar cane grown by a number of colonos is ground at Central Roig, owned by Antonio Roig Sucrs., S. en C., hereinafter referred to as Roig. These colonos transport and haul their cane to the sidings designated by the central in the manner described in § 6(c); i.e., on portable tracks and cane cars owned by Roig. However, the latter refused to pay these colonos five cents per ton of cane for such hauling expenses as required by § 6(c). On the contrary, Roig charged them ten cents per ton for the use of its portable tracks.

The Sugar Board of Puerto Rico issued an order requiring Roig to show cause why it was not complying with § 6(c). After a hearing, at which Roig argued that § 6(c) was unconstitutional, on June 13, 1952 the Board entered an order requiring Roig (1) to reimburse its colonos for the money collected from them for the use of its portable tracks; (2) to supply portable tracks and the necessary rolling material to its colonos without cost; (3) to pay its colonos five cents per ton of cane hauled to date by means of portable tracks; and (4) to pay five cents per ton for cane which is thereafter hauled in the same manner.[1]

---

[1] We assume that the terms of this order apply as of the effective date of Act No. 426.

Pursuant to § 33 of Act No. 426, Roig filed in this Court a petition for review of the order of the Board.

■ The petitioner argues that the division of its business known as Central Roig is engaged exclusively in the industrial, as distinguished from the agricultural, phase of the sugar industry; and that it is a violation of Federal and local due process of law to require it (a) to furnish its colonos, who are in the agricultural phase of the industry, portable tracks and cane cars free of charge, and (b) to pay the said colonos five cents per ton of cane for hauling expenses, as provided in § 6 (c).[2]

Roig apparently believes that there are two airtight compartments of the sugar business—industrial and agricultural—which are completely separate from each other and which cannot be treated together by the Legislative Assembly as one industry for purposes of regulation. We can see no basis for this position. As hereinafter noted, both Federal and State legislation regulating the sugar industry as a whole have been sustained. Act No. 426 similarly regulates the entire industry in Puerto Rico, including both the agricultural and the industrial phases. We find nothing improper or invalid in that approach.

Roig cites a number of cases for the proposition that the agricultural and industrial phases of the sugar industry must be treated separately. But these cases do not support this theory.[3] Most of them arose under statutes which by

---

[2] The petitioner actually engages in both grinding and farming operations. However, for accounting and other purposes it calls one "division" of its business Central Roig, which does nothing but grind cane. We put aside the question of whether, under these circumstances, the petitioner is entitled to argue that the sugar industry is divided into two parts—agricultural and industrial—and that it is dedicated exclusively to the industrial phase.

[3] Roig cites such cases as *Allen* v. *Smith*, 173 U.S. 389, 398; *Bowie* v. *González*, 177 F. 2d 11 (C.A. 1, 1941); *Vives* v. *Serrallés*, 145 F. 2d 552 (C.A. 1, 1944); *Stuart* v. *Kleck*, 129 F. 2d 400 (C.A. 9, 1942); *Sancho* v. *Bowie*, 93 F. 2d 323 (C.A. 1, 1937); *Central Coloso* v. *Tax Court*, 70 P.R.R. 62; *Luce & Co.* v. *Minimum Wage Board*, 62 P.R.R. 431, affirmed in 150 F. 2d 983 (C.A. 1, 1946). Although not in point here, some of

definition created the two different categories of agricultural and industrial phases of the sugar industry for tax and wage purposes. Under these statutes different wages and taxes were paid, depending on whether an activity was agricultural or industrial as defined in the statutes. But the delineation between agricultural and industrial phases of the sugar business in these statutes is not sacrosanct and is not found in Act No. 426. The cases decided under statutes which distinguish between these two phases of the industry for wage and tax purposes are therefore not relevant here.[4]

■■■■ The principal contention of the petitioner is that § 6(c) violates Federal due process and the due process clause—§ 7 of Article II—of the Constitution of the Commonwealth of Puerto Rico.[5] Roig relies on cases holding

---

these cases contain language which sheds light on the nature of the sugar industry and are cited hereinafter for that purpose.

[4] We rejected a similar contention in *Central Coloso* v. *Tax Court*, *supra*, involving the question of whether railroad cars used to transport cane to a central were exempt from excise taxes under a statute exempting equipment essential to the operation of an industrial plant. We held that under this statute the industrial process does not include transportation of the raw materials needed for that process. We said at p. 65: "The petitioner also relies on certain regulations of the Public Service Commission as to hauling cane and on *Calaf* v. *González*, 127 F. 2d 934 (C.C.A. 1, 1942), which holds that employees of the mill engaged in transporting cane are covered by the Fair Labor Standards Act. But regulation of the petitioner as a public utility and coverage of a remedial wage statute which must be liberally interpreted have no bearing on a tax exemption statute which clearly does not cover transportation of raw materials and which in any event must be strictly construed. And *cf. Sancho* v. *Bowie*, 93 F.2d 323, 326 (C.C.A. 1, 1937)."

[5] See *Mora* v. *Mejías*, 206 F.2d 377, 382 (C.A. 1, 1953); *People* v. *Figueroa*, ante, p. 175. *Cf.* Note, *State Views on Economic Due Process: 1937–1953*, 53 Col. L. Rev. 827; Note, *Constitutional Law: Substantive Due Process: Minimum Price Laws*, 42 Calif.L.Rev. 172, which discuss recent state cases holding statutes involving economic regulation invalid under due process clauses of state constitutions. These state cases—and similar cases cited in the brief of Eastern Sugar Associates in *Colonos de Caña de Santa Juana, Inc.*, etc., et al. v. *Sugar Board*, No. 6, decided today—are inapplicable here and in any event are not binding on us.

At times the petitioner characterizes § 6(c) of Act No. 426 as constituting the taking of its property without just compensation. See § 9 of Article II of the Constitution of the Commonwealth.

that it violates due process to require as public utilities (1) that electric companies furnish consumers with electric light bulbs; (2) that railroads install and maintain scales or spur tracks; and (3) that railroads furnish the use of their facilities to another company. Some of the cases it cites concern the question of whether public service commissions may regulate or prohibit such things as the sale of appliances and charges for repairs and wiring by public utilities.[6]

Here again the cases cited by Roig have no bearing on the problem before us. There are a number of ways in which those cases are distinguishable. But the most important difference between them and the situation here is that Act No. 426 regulates the sugar industry in Puerto Rico. Consequently, the question of whether its provisions violate due process of law must be determined in the light of the conditions and problems of that particular business. *Nebbia* v. *New York*, 291 U.S. 502, 525.[7]

---

[6] The cases and other authorities which Roig cites on this point are as follows: *In Re Opinion of the Justices,* 14 N.E.2d 392 (Mass., 1938); Annotation, 115 A.L.R. 1162; *Great Northern Ry. Co.* v. *Minnesota,* 238 U.S. 340; *Great Northern Ry. Co.* v. *Cahill,* 253 U.S. 71; *Northern Pac. Ry. Co.* v. *Railroad Commission,* 108 Pac. 938 (Wash., 1910); *Consumers' Sanitary C. & B. Stores* v. *Illinois Com. Com'n.,* 348 Ill. 615, 181 N.E. 411 (Ill., 1932); *Public Utilities Comm.* v. *Commonwealth Edison Co.,* P.U.R. 1918 F. 109 (Ill., 1918); *Pub. Util. Comm.* v. *Henderson County Pub. Serv. Co.,* P.U.R. 1920 C 381 (Ill., 1920); *Claggett* v. *Eastern Shore Gas & E. Co.,* P.U.R. 1920 C 501 (Md., 1920); *Just* v. *Consolidated Gas Co.,* P.U.R. 1918 C 390 (N.Y., 1918); *Capital Gas & Electric Co.* v. *Boynton,* 22 P.2d 958 (Kans., 1933); *Gamble-Robinson F. Co.* v. *Chicago, M. & St. P. Ry. Co.,* P.U.R. 1927 D 320 (S.D., 1927); *Louisville &c. R.R. Co.* v. *Stock Yards Co.,* 212 U.S. 132; *Southern Ry. Co.* v. *Shealy,* 18 F.2d 784 (Dist. Ct., S.C., 1927).

[7] "The Fifth Amendment, in the field of federal activity, and the Fourteenth, as respects state action, do not prohibit governmental regulation for the public welfare. They merely condition the exertion of the admitted power, by securing that the end shall be accomplished by methods consistent with due process. And the guaranty of due process, as has often been held, demands only that the law shall not be unreasonable, arbitrary or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained. *It results that a regulation valid for one sort of business, or in given circumstances, may*

Roig asserts cryptically that it violates due process to require it (a) to permit colonos to use its railroad facilities free and (b) to pay colonos for hauling their own cane. But § 6(c), which contains these requirements, cannot be examined in isolation. It must be read together with the other provisions of Act No. 426 against the background of the sugar industry in Puerto Rico.

No industry has been more extensively regulated in the public interest than the sugar business in Puerto Rico. Act No. 112, Laws of Puerto Rico, 1937, established uniform standards and participations for the grinding of sugar cane by mills for colonos. The validity of this Act under the due process clause as applied to the operator of a particular mill was unsuccessfully challenged in *Vidal* v. *Fernández*, 104 F.2d 606 (C.A. 1, 1939) cert. denied, 308 U.S. 602.

Act No. 221, Laws of Puerto Rico, 1942, abandoned the approach used in Act No. 112 of providing uniform participations for the grinding of colono cane.[8] Instead, under Act No. 221 the mills were declared to be public utilities and the Public Service Commission was required to fix for each mill the individual rate for grinding colono cane which would yield to the particular mill a fair return on the fair value of its property devoted to such service. We sustained the validity of Act No. 221 insofar as it required a mill which ground only its own cane to obtain a "franchise" from the Public Service Commission. *People* v. *A. Roig, Sucrs.*, 63 P.R.R. 17. In affirming this judgment, the Court of Appeals construed a "franchise" under those circumstances as a "license". *Roig* v. *People of Puerto Rico*, 147 F.2d 87 (C.A. 1, 1945). *Cf.* Duke, Comment, 30 Cornell L. Q. 243.

After nine years of experience under Act No. 221, the Legislative Assembly once more made an important change

---

*be invalid for another sort, or for the same business under other circumstances, because the reasonableness of each regulation depends upon the relevant facts."* Nebbia v. New York, supra, p. 525 (Italics ours).

[8] "Colono cane" is cane grown by independent farmers or colonos, as distinguished from "administration cane" which is grown by the mill itself.

of policy in the regulation of the sugar industry in Puerto Rico. It repealed Act No. 221.[9] And it replaced it with Act No. 426 of 1951. Under the latter the mills were no longer considered as public utilities with rates to be charged individually by each mill as fixed by the Public Service Commission. Act No. 426 reverted in substance to the method of uniform participations as found in Act No. 112 of 1937, although with a number of changes, more flexibility, and greatly expanded powers for the Sugar Board. See *Molini v. Sociedad Mario Mercado e Hijos*, 73 P.R.R. 873, 881. For discussions of the provisions of Acts Nos. 112, 221 and 426, see García Martínez, *Local Regulation of the Sugar Industry in Puerto Rico*, XXII Rev.Jur. U.P.R. 385; Novas, *La Central Azucarera como Empresa de Servicio Público—Apuntes sobre la Constitucionalidad de la Ley No. 221 de 1942*, 8 *Revista de Derecho, Legislación y Jurisprudencia del Colegio de Abogados de Puerto Rico* 342; José Acosta Velarde, *Consideraciones sobre la Ley Azucarera de Puerto Rico, Revista del Café*, September 1953, p. 13.

In addition to the foregoing local regulatory statutes, production and marketing controls have been established by Federal law. The Jones-Costigan Act of 1934, 48 Stat. 670; the Sugar Act of 1937, 50 Stat. 903; the Sugar Act of 1948, as amended, 61 Stat. 922, 7 U.S.C.A. §§ 1100–60. The

---

[9] Some of the problems raised by Act No. 221 are discussed in *Cía. Azucarera Toa* v. *Public Serv. Comm'n*, 71 P.R.R. 197; *Godreau & Co.* v. *Public Service Comm'n*, 71 P.R.R. 608. These cases did not invalidate any provision of Act No. 221. In the *Toa* case we held that under Act No. 221 a temporary rate to be charged by a mill as a public utility for grinding colono cane could not be fixed by the Public Service Commission unless a proceeding to fix a permanent rate therefor was pending. In the *Godreau* case we held that certain orders of the Public Service Commission with reference to services and rates under Act No. 221 were invalid not only for the reason stated in the *Toa* case but also because hearings thereon were not properly held. In the *Godreau* case we also dismissed the appeal for lack of jurisdiction as to certain General Regulations of the Public Service Commission.

For another facet of Act No. 221, see *People* v. *Eastern Sugar Associates*, 72 P.R.R. 548.

Supreme Court of the United States has held that the quotas fixed by the Secretary of Agriculture under the Federal Sugar Act of 1948 for marketing of Puerto Rican refined sugar in continental United States did not violate due process. *Secretary of Agriculture* v. *Central Roig Co.*, 338 U.S. 604.[10]

The foregoing comprehensive regulation of the sugar business has been due to a combination of factors. First and above all, the sugar business is the backbone of the economy of Puerto Rico. It is "...the vital nerve of our insular economy." Act No. 396, Laws of Puerto Rico, 1950, Statement of Motives; Perloff, *Puerto Rico's Economic Future* 67–9, 88–91, 278; *People of Puerto Rico* v. *Eastern Sugar Associates*, 156 F.2d 316, 325 (C.A. 1, 1946); *Roig* v. *People of Puerto Rico, supra,* p. 90. Obviously, the Legislative Assembly was therefore justified in regulating it in the public interest—whether or not the mills are considered or treated as traditional public utilities. *Nebbia* v. *New York, supra,* pp. 531–4.[11] Second, the ownership and cultivation of land

---

[10] Federal and local laws have also regulated wages, hours and working conditions in the sugar industry. *Bowie* v. *González, supra; Vives* v. *Serrallés, supra; Luce & Co.* v. *Minimum Wage Board, supra; Peña* v. *Eastern Sugar Associates,* 75 P.R.R. 288, 305, 310, also reported in 24 Labor Cases 85,254 and 25 Labor Cases 86,103.

[11] Act No. 221 declared sugar mills to be public utilities. This concept was eliminated by Act No. 426. But the fact that sugar mills are no longer public utilities as such does not invalidate the provisions in Act No. 426 for minimum payments by the mills to the colonos for their cane. *Nebbia* v. *New York, supra,* pp. 531–4, rejected the contention that price control laws are valid only for traditional public utilities. The *Nebbia* case also makes it clear that the phrase "affected with a public interest" is not confined to certain types of businesses. It says at p. 534: "... if one embarks in a business which public interest demands shall be regulated, he must know regulation will ensue." And at p. 536: "It is clear that there is no closed class or category of businesses affected with a public interest, and the function of courts in the application of the Fifth and Fourteenth Amendments is to determine in each case whether circumstances vindicate the challenged regulation as a reasonable exertion of governmental authority or condemn it as arbitrary or discriminatory. *Wolff Packing Co.* v. *Industrial Court,* 262 U.S. 522, 535. The phrase 'affected with a public interest' can, in the nature of things, mean no more

in Puerto Rico—a densely populated community with a largely agricultural economy—is of profound importance to the public welfare. See Statement of Motives, Act No. 26, Laws of Puerto Rico, 1941, known as the Land Law of Puerto Rico; § 11(a) of Act No. 26, as added by Act No. 8 of November 20, 1942; *People* v. *Rubert Hermanos, Inc.*, 53 P.R.R. 741, 752–3, and the same case in 309 U. S. 543, 548; *People of Puerto Rico* v. *Eastern Sugar Associates, supra; Roig* v. *People of Puerto Rico, supra*, p. 90; Koenig, *A. Comprehensive Agricultural Program for Puerto Rico*, 31–42. Third, it was reasonable to establish by law the minimum prices to be paid by mills for colono cane because of the facts (1) that cane is a perishable product which must be ground shortly after harvesting, and (2) that colonos are usually dependent on the nearest mills to which their cane must be transported for grinding. See *Godreau & Co.* v. *Public Service Comm'n, supra*, pp. 617–8, where we spoke of the effort of the Legislature in Act No. 221 "...to assure fair treatment to *colonos*, which is made necessary by the advantageous situation of the companies...".[12] So much has been said as to all these circumstances in the sugar business that for us

---

than that an industry, for adequate reason, is subject to control for the public good." See Rottschaefer on *Constitutional Law*, p. 487.

[12] An attorney who represents an entity which operates a sugar mill has described this situation as follows: "Because of the peculiar nature of sugar cane—its perishability—it is necessary to grind it within the shortest possible time after cutting it. The farmer is therefore practically compelled to grind his cane at the mill closest to his farm. On the other hand, cane cannot be economically transported for long distances; for this reason, *the custom has been established in the industry for the central to pay the colono a certain amount per ton of cane for transportation and hauling expenses*, that is, the expense of transporting cane from the farm to the patio of the mill. The combination of the two aforesaid factors—perishability and high cost of transportation—constitutes the basic cause why the mill in reality exercises a true monopoly in its locality." Novas, *supra*, pp. 369–70. (Italics ours). It should be noted that during the 1954 crop year there were in operation only 33 sugar mills, which ground the cane of many thousands of colonos. Report of Sugar Board, dated September 9, 1954, *Caña Molida, Azúcar 96° Producida, y Participación del Colono, Zafra de 1954.*

to expatiate on them would be to indulge in ostentatious supererogation. *Vidal* v. *Fernández, supra,* p. 609; *Roig* v. *People of Puerto Rico, supra,* p. 90; see *Bowie* v. *González, supra,* p. 14; *Secretary of Agriculture* v. *Central Roig Co., supra,* pp. 605–6, 617–8.[13]

We cannot accept the view that we must fix our attention solely on § 6(c) and declare it unconstitutional because it requires Roig to furnish its portable tracks free to its colonos and to pay them five cents per ton of cane as hauling expenses. "A Section of a statute is read not in isolated fashion but together with the other Sections of the Act in order to ascertain its true meaning and purpose." *People* v. *Mantilla,* 71 P.R.R. 35, 40, and cases cited; *Orta* v. *Registrar,* 60 P.R.R. 768, 772; *Vázquez* v. *Board of Trustees,* 59 P.R.R. 144, 148; *People of Puerto Rico* v. *Eastern Sugar Associates, supra,* p. 323. Section 6(c) must be read in the context of Act No. 426 as a whole and bearing in mind the

---

[13] In passing Act No. 426 of 1951 the Legislative Assembly apparently acted on the premise that the relationship between the colonos and the mills has not basically changed. We cannot say that the Legislative Assembly was arbitrary and wholly unreasonable in reaching that conclusion on this debatable issue. The language of the Supreme Court in *Secretary of Agriculture* v. *Central Roig Co., supra,* is relevant on this point. It said at p. 606, footnote 1: "In the course of this opinion all expressions of an economic character are to be attributed to those who have authority to make such economic judgments—the Congress and the Secretary of Agriculture—and are not to be deemed the independent judgments of the Court. It is not our right to pronounce economic views; we are confined to passing on the right of the Congress and the Secretary to act on the basis of entertainable economic judgments." The language in *Day-Brite Lighting, Inc.* v. *Missouri,* 342 U.S. 421, 425, is to the same effect: "But if our recent cases mean anything, they leave debatable issues as respects business, economic, and social affairs to legislative decision."

The foregoing paragraph disposes of the assertion of the petitioners in *Eastern Sugar Associates* v. *Sugar Board,* No. 2, decided today, that they do not concede that the economic relationship between the mills and the colonos is correctly described in *Vidal* v. *Fernández, supra.* The question may well be a debatable one. But the debate must be resolved, under the *Central Roig Co.* and the *Day-Brite* cases, by the Legislative Assembly, not by us. We can strike down the legislative conclusion only if it is arbitrary and wholly unreasonable. We are unable to make such a finding here.

above-noted circumstances of the sugar business in Puerto Rico.

Section 5 of Act No. 426 establishes a minimum participation for the colono in the sugar and molasses obtained from his sugar cane. Section 6 recognizes that different methods of transporting and hauling colono cane to the mill are in use and establishes the manner of defraying the expenses in connection with each method. Section 7 is concerned with the liquidation of the participation of the colono, either in sugar or in cash.[14] In this case Roig complains of none of these provisions except 6(c), which provides the manner of paying for hauling cane where the mill chooses to use the method described therein. But § 6(c) is an integral part of a comprehensive statute which—like such statutes as Acts 112 and 221 in the past—undertakes to regulate on an over all basis the compensation to which colonos are entitled. Practically speaking, it supplements § 5 in providing some additional compensation for the colonos.[15] Indeed, the word "compensate" recurs frequently throughout § 6. In addition to the fact that it was following custom and tradition, it may well be that the Legislative Assembly decided to incorporate in § 6 the different methods of compensating the colonos for transportation and hauling expenses rather than to increase correspondingly the colono's participation under § 5 to cover such expenses for at least two reasons: (1) the varying methods and costs of transportation and hauling which would make it difficult to establish a fair average therefor; (2) the lack of capital or economic justification in some instances

---

[14] For a more detailed examination of §§ 5, 6 and 7, see *Eastern Sugar Associates* v. *Sugar Board*, No. 2, *Eastern Sugar Asociates* v. *Sugar Board*, No. 3, and *Colonos de Caña de Santa Juana, Inc., etc., et al.* v. *Sugar Board*, No. 6, decided today.

[15] *Cf.* the statement in *Bowie* v. *González, supra*, p. 14, that ". . . as *compensation for hauling the cane of the colonos* and extracting the sugar therefrom, the appellants [Eastern Sugar Associates] receive approximately 35 per cent of the raw centrifugal sugar produced from such cane." (Matter in italics and brackets ours). See also, *González* v. *Bowie*, 123 F.2d 387, 389 (C.A. 1, 1941).

for colonos to transport and haul their own cane.[16] In any event, the compensation of the colono for his cane is not provided exclusively by § 5. On the contrary, his compensation is established by the terms of §§ 5, 6 and 7, as read together.[17] No testimony was offered before the Board to show and it is not contended here that Roig will be compelled to operate its mill at a loss or insufficient profit under §§ 5, 6 and 7 and the other provisions of Act No. 426. Under these circumstances, in view of the authority of the Legislative Assembly to establish the minimum compensation to colonos because of the importance of such a measure to the economy of Puerto Rico and because of the disadvantages under which the colonos operate, see *Vidal* v. *Fernández*, supra, p. 609, we find no basis for singling out § 6(c), which provides for a comparatively small part of the compensation the colonos receive, and striking it down as violative of due process of law. "It would be a singular intrusion of the judiciary into the Legislative process to extrapolate restrictions upon the formulation of such an economic policy from those deeply rooted notions of justice which the Due Process Clause expresses." *Secretary of Agriculture* v. *Central Roig Co.*, supra, p. 617. See, by analogy, *B. & O. R. Co.* v. *United States*, 345 U. S. 146; *California Auto. Assn.* v. *Maloney*, 341 U. S. 105; *Alabama Comm'n* v. *Southern R. Co.*, 341 U. S. 341, concurring opinion of Mr. Justice Frankfurter at pp. 352–3; *Day-*

---

[16] We reject as irrelevant, under the circumstances, the argument made in *Eastern Sugar Associates* v. *Sugar Board*, No. 2, and in *Colonos de Caña de Santa Juana, Inc.*, etc., et al. v. *Sugar Board*, No. 6, both decided today, that § 6 is invalid because it provides for compensation and services to the colono which have no relation to the unit price either of sugar or of the services of the mill.

[17] For the reasons stated herein, we find untenable the contention that the phrase "en pago de éstas" in the Spanish version of § 5 shows that § 5 provides for all the compensation to which the colono is entitled. For the same reasons, § 38 of Act No. 426 does not change our view that §§5, 6 and 7 must be read together. Section 38 is the usual separability clause which would come into play only if part of Act No. 426 were held unconstitutional and has no bearing on the problem before us. See *Tugwell* v. *District Court*, 64 P.R.R. 213.

*Brite Lighting, Inc.* v. *Missouri, supra; Atchison R. Co.* v. *Pub. Util. Comm'n.*, 346 U. S. 346; *Sunshine Coal Co.* v. *Adkins*, 310 U. S. 381; *U. S.* v. *Rock Royal Co-op.*, 307 U. S. 533; *Escudero* v. *Minimum Wage Board*, 66 P.R.R. 561, 563, opinion set aside for other grounds, 66 P.R.R. 567; *Ponce Candy Industries* v. *District Court*, 69 P.R.R. 387, 391 *et seq.*; *Luce & Co.* v. *Minimum Wage Board, supra*, p. 437; *Caguas Bus Line* v. *Comm'r of Labor*, 73 P.R.R. 690, 698; *Hilton Hotels* v. *Minimum Wage Board*, 74 P.R.R. 628, 668; *Condado Hotel* v. *Minimum Wage Board*, 74 P.R.R. 678, 683; 66 Harv.L.Rev. 89, 132, footnote 251.[18]

We think that on the record before us § 6(c) is valid irrespective of historical considerations. Nevertheless, its validity, when read together with the rest of Act No. 426, is reinforced by the fact that, with some comparatively minor exceptions, Acts Nos. 112, 221 and 426 have, generally speaking, followed the customs and historical pattern of the sugar industry in Puerto Rico in fixing the compensation, including transportation and hauling expenses, which the mills have been required to pay colonos. *Cf.* § 7 of Act No. 112

---

[18] The language in *Day-Brite Lighting, Inc.* v. *Missouri, supra*, applies here. The Court said at p. 423: "The liberty of contract argument pressed on us is reminiscent of the philosophy of *Lochner* v. *New York*, 198 U.S. 45, which invalidated a New York law prescribing maximum hours for work in bakeries; *Coppage* v. *Kansas*, 236 U.S. 1, which struck down a Kansas statute outlawing 'yellow dog' contracts; *Adkins* v. *Children's Hospital*, 261 U.S. 525, which held unconstitutional a federal statute fixing minimum wage standards for women in the District of Columbia, and others of that vintage. Our recent decisions make plain that we do not sit as a superlegislature to weigh the wisdom of legislation nor to decide whether the policy which it expresses offends the public welfare. The legislative power has limits, as *Tot* v. *United States*, 319 U.S. 463, holds. But the state legislatures have constitutional authority to experiment with new techniques; they are entitled to their own standard of the public welfare; they may within extremely broad limits control practices in the business-labor field, so long as specific constitutional prohibitions are not violated and so long as conflict with valid and controlling federal laws are avoided. That is the essence of *West Coast Hotel Co.* v. *Parrish*, 300 U.S. 379; *Nebbia* v. *New York*, 291 U.S. 502; *Olsen* v. *Nebraska*, 313 U.S. 236; *Lincoln Union* v. *Northwestern Co.*, 335 U.S. 525; and *California Auto. Assn.* v. *Maloney*, 341 U.S. 105."

of 1937, as amended by Act No. 213, Laws of Puerto Rico, 1938, and as interpreted in *Calaf* v. *González*, 127 F.2d 934, 937 (C.A. 1, 1942); Article 7 of the General Regulations of the Public Service Commission under Act No. 221 of 1942, as referred to in *Godreau & Co.* v. *Public Service Comm'n*, *supra*, p. 621; *Molini* v. *Sociedad Mario Mercado e Hijos*, *supra*, p. 875; *South P. R. Sugar Co.* v. *District Court*, 62 P.R.R. 811, 813; *Novas*, *supra*, p. 345, footnote 9; *García Martínez*, *supra*, p. 390. Indeed, in order to qualify for benefit payments under the Federal Sugar Act, mills have been required to continue to absorb costs such as transportation and hauling expenses which they have traditionally assumed. See Code of Federal Regulations, Title 7—Agriculture, Cumulative Pocket Supplement, 1954, Part 877—Sugar Cane; Puerto Rico [Added] pp. 683 *et seq.; cf. Bravo* v. *Treasurer of Puerto Rico*, 76 P.R.R. 145. It is true that in the particular case of Roig in the past it did not handle the item of hauling expenses in the manner contemplated by § 6(c). But that does not prevent the Legislative Assembly from enacting a statute which includes § 6(c) and which, in the main, restates the customs and practices of the sugar industry here. See *Secretary of Agriculture* v. *Central Roig Co., supra*, pp. 618–9.

 It is not the function of the courts to pass on the wisdom or policy of an Act of the Legislative Assembly. "...[T] he guaranty of due process...demands only that the law shall not be unreasonable, arbitrary or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained." *Nebbia* v. *New York, supra*, p. 525, as quoted in footnote 7 herein; *Sunshine Coal Co.* v. *Adkins, supra*, 394; *People of Puerto Rico* v. *Eastern Sugar Associates, supra*, p. 324; footnotes 13 and 18 of this opinion. For the reasons stated (1) in this opinion, (2) in *Eastern Sugar Associates* v. *Sugar Board*, No. 2, decided today, and (3) in *Eastern Sugar Associates* v. *Sugar Board*, No. 3, decided today, the provision of § 6(c)

that the central shall furnish the colono portable tracks free of charge and pay him 5¢ per ton of cane as hauling expenses meets this test. Accordingly, we cannot hold that this provision of § 6 is violative of local or Federal due process.

The order of the Sugar Board will be affirmed with costs and expenses imposed on the petitioner pursuant to § 33 of Act No. 426.

Mr. Justice Ortiz and Mr. Justice Sifre did not participate herein.